## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. |
| GERALD SANDUSKY, in his individual capacity and his official capacity for The Second Mile, and DOROTHY SANDUSKY, | |
| Defendants. | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, State Farm Fire and Casualty Company, by and through its undersigned counsel, Christie, Pabarue, Mortensen and Young, A Professional Corporation, as and for its complaint for declaratory judgment states as follows:

## JURISDICTION AND VENUE

1.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

2.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as this action is between citizens of different states and the amount in controversy exceeds $75,000.

3.     Venue is proper in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(a), as the defendants are residents in the Middle District of Pennsylvania and/or a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Pennsylvania.

## THE PARTIES

4.      Plaintiff in this action is State Farm Fire and Casualty Company ("State Farm"), which is a wholly-owned subsidiary of State Farm Mutual Automobile Insurance Company, an Illinois mutual insurance company, having its principal place of business at One State Farm Plaza, Bloomington, Illinois, 61710-0001.   State Farm is licensed to, and did in fact, issue insurance policies in the Commonwealth of Pennsylvania.

5.      Upon information and belief, Defendant Gerald Sandusky ("Sandusky") is an adult individual residing at 130 Grandview Road, State College, Pennsylvania, 16801-7011.

6.      Upon information and belief, Defendant Dorothy Sandusky is an adult individual residing at 130 Grandview Road, State College, Pennsylvania, 16801-7011.   Dorothy Sandusky is joined to this action solely as a named insured on the policy at issue.

7.      Upon information and belief, Gerald Sandusky and Dorothy Sandusky are husband and wife.

8.      Plaintiff issued a policy of insurance for the home of Mr. and Mrs. Sandusky, which insurance is more fully described below.

9.      The scope of the coverage available to Sandusky is governed by the terms, conditions and exclusions of the policy.

## NATURE OF THE ACTION

10.      This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201.   In this action, State Farm seeks a determination of its rights and obligations under a homeowners insurance policy issued by State Farm to Sandusky and his wife.

768272.1

11.     State Farm issued Policy No. 38-517587-9 ("Policy" or "State Farm Policy") to Sandusky providing homeowners coverage beginning April 1, 1985.

12.     Policy No. 38-517578-9 was renewed annually.

13.     Despite a diligent search, and in part due to State Farm's records retention policies, State Farm cannot locate copies of the Policy for each year it was issued at this time.

14.     Through the relevant time periods – April 1, 1991 through April 1, 2007 – there were five (5) standard homeowners policy forms in use by State Farm that made up the Policy.

15.     The standard homeowners policy forms were in effect as follows:

- FP-7193 was one of two homeowners policy forms available from State Farm as of April 1, 1991.  A true and correct copy of form FP-7193 is attached hereto as Exhibit "A".  FP-7193 began to be phased out during the policy renewal period beginning July 1, 1991.  All policies using the FP-7193 form went out of circulation as they were renewed;

- The alternative to FP-7193 which was also available as of April 1, 1991 was FP-7195.  A true and correct copy of form FP-7195 is attached hereto as Exhibit "B".  FP-7195 also began to be phased out during the policy renewal period beginning July 1, 1991.  All policies using the FP-7195 form went out of circulation as they were renewed;

- FP-7193 was replaced by FP-7923 during the policy renewal cycle beginning July 1, 1991.  A true and correct copy of form FP-7923 is attached hereto as Exhibit "C";

- FP-7195 was replaced by FP-7925 during the policy renewal cycle beginning July 1, 1991. A true and correct copy of form FP-7925 is attached hereto as Exhibit "D";

- Ultimately both FP-7923 and FP-7925 were replaced by FP-7955 during the renewal cycle beginning December 1, 1997. FP-7955 continues in use as the homeowners policy form now available from State Farm. A true and correct copy of form FP-7955 is attached hereto as Exhibit "E".

16.    Upon the renewal date of the Policy issued to Sandusky State Farm issued a policy incorporating the relevant policy form. True and correct copies of Renewal Certificates for Policy No. 38-517578-9 from April 1, 2001 through April 1, 2006 are attached hereto as Exhibit "F".

17.    The Policy also contains certain mandatory forms and endorsements, different versions of which became effective throughout the policy period.

18.    The mandatory forms and endorsements do not alter the general coverage provided by the Policy, or any provisions or exclusions subsequently cited in this complaint. True and correct copies of all mandatory forms and endorsements that were in effect at any time between April 1, 1991 and April 1, 2007 are attached hereto as Exhibit "G".

19.    The Policy provides materially similar coverage throughout the policy period, with modifications noted where relevant.

20.    State Farm is able to provide certified copies of the Policy for policy periods beginning April 1, 2006 through April 1, 2008. A certified copy of the Policy for policy period April 1, 2006 to April 1, 2007 is attached hereto as Exhibit "H", and a certified copy of the Policy for policy period April 1, 2007 to April 1, 2008 is attached hereto as Exhibit "I".

21.    The Thirty-Third Statewide Investigating Grand Jury conducted an investigation regarding reports of sexual assaults of minor males by Sandusky over a period of years.

22.    The Grand Jury investigation resulted in two reports.  True and correct copies of the Grand Jury presentments are attached hereto as Exhibit "J".

23.    Sandusky was arrested and charged with numerous counts of various sex crimes against minors.

24.    Sandusky was also named as a defendant in an action filed against him captioned *John Doe A v. The Second Mile, et al.*, No. 02968, November Term, 2011, filed in the Pennsylvania Court of Common Pleas for Philadelphia County ("Underlying Action").  A true and correct copy of the complaint in the Underlying Action is attached hereto as Exhibit "K".

25.    State Farm issued the State Farm Policy to provide coverage for the property of Sandusky and his wife.

26.    The State Farm Policy also provides limited personal liability coverage.

27.    The personal liability coverage only applies to bodily injury caused by an occurrence.

28.    The personal liability coverage excludes coverage for bodily injury that is intentionally caused by the policyholder and for bodily injury that is expected or intended by the policyholder or the result of any willful and malicious acts of the policyholder.

29.    The personal liability coverage also excludes coverage for bodily injury arising out of the business pursuits of any policyholder.

30.    The Policy is further subject to certain terms, conditions, limitations, exclusions and endorsements as set forth in the Policy.

768272.1

31.     Sandusky sought defense and indemnity from State Farm for the criminal proceedings against him and for the Underlying Action.

32.     State Farm disclaimed coverage to Sandusky for the criminal proceedings.

33.     State Farm has been providing a defense to Sandusky for the Underlying Action pursuant to a Reservation of Rights letter dated February 28, 2012.  A true and correct copy of the Reservation of Rights letters sent to Sandusky and his attorney are attached hereto as Exhibit "L".

34.     State Farm seeks a determination that it has no obligation to defend Sandusky for the criminal proceedings against him under the Policy.

35.     State Farm further seeks a determination that it has no obligation to defend Sandusky for the Underlying Action because the bodily injury, as defined within the policy, if any, was not the result of an occurrence and certain exclusions apply to the allegations of the Underlying Action.

36.     Further, State Farm seeks a determination that it has no duty to indemnify Sandusky for the Underlying Action.

## STATEMENT OF FACTS

37.     With respect to Personal Liability Coverage, all five (5) policy forms provide as follows:

COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1.     pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.    provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

*See* Exhibits A through E (emphasis in original).

38.    The Policy defines "occurrence," also consistent in all five (5) policy forms, as follows:

## DEFINITIONS

7.    "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

    a.    **bodily injury**; or

    b.    **property damage**;

during the policy period.  Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

*See* Exhibits A through E (emphasis in original).

39.    The Policy contains an intentional acts exclusion, found in forms FP-7193, FP-7923, FP-7195 and FP-7925 (April 1, 1991 to December 1, 1997) as follows:

## SECTION II – EXCLUSIONS

1.    Coverage L and Coverage M do not apply to:

    a.    **bodily injury** or **property damage**:

        (1)    which is either expected or intended by the **insured**; or

        (2)    to any person or property which is the result of willful and malicious acts of an **insured**;

*See* Exhibits A through D (emphasis in original).

-7-

40.     Policy form FP-7955 (December 1, 1997 to present) modifies the intentional acts exclusion as follows:

## SECTION II – EXCLUSIONS

1.     Coverage L and M do not apply to:

    a.     **bodily injury** or **property damage**:

        (1)     which is either expected or intended by the **insured**; or

        (2)     which is the result of willful and malicious acts of the **insured**.

*See* Exhibit E (emphasis in original).

41.     All policy forms also contain a business pursuits exclusion, as follows:

## SECTION II – EXCLUSIONS

1.     Coverage L and Coverage M do not apply to:

    b.     **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

        (1)     to activities which are ordinarily incident to non-**business** pursuits; …

*See* Exhibits A through E (emphasis in original).

42.     "Business" is defined in all policy forms as follows:

## DEFINITIONS

2.     "**business**" means a trade, profession or occupation. This includes farming.

*See* Exhibits A through E (emphasis in original).

43.     The Thirty-Third Statewide Investigating Grand Jury conducted a multi-year investigation regarding allegations of the sexual assault of male minors by Sandusky.

768272.1

44.    The initial Grand Jury presentment details the reported sexual assault of eight (8) victims by Sandusky.  *See* Exhibit J.

45.    The findings in the initial Grand Jury presentment allege Sandusky:

- Indecently fondled and engaged in oral sex with Victim 1 numerous times from 2005 through 2008;

- Engaged in anal intercourse with Victim 2 in 2002;

- Inappropriately touched and showered with Victim 3 several times beginning in 2000;

- Engaged in Involuntary Deviate Sexual Intercourse and Indecent Assault with Victim 4 repeatedly from 1996 or 1997 through at least 1999;

- Inappropriately touched and showered with Victim 5 several times beginning in approximately 1996;

- Inappropriately touched, wrestled with and showered with Victim 6 in 1998;

- Inappropriately touched and showered with Victim 7 several times beginning after 1994; and

- Performed oral sex on Victim 8 in 2000.

*See* Exhibit J.

46.    The findings in the second Grand Jury presentment allege Sandusky:

- Sexually assaulted Victim 9 numerous times between approximately 2004 through 2008; and

- Inappropriately touched and engaged in oral sex with Victim 10 numerous times beginning in 1997.

*See* Exhibit J.

47.    Sandusky was arrested on November 5, 2011 and charged with forty (40) counts of various sex crimes committed against minors.  Attached hereto as Exhibit "M" is a true and correct copy of the Criminal Docket for *Commonwealth v. Sandusky*, No. CP-14-CR-0002422-2011.

48. The offense dates of the charges against Sandusky range from 1995 through 2005. *See* Exhibit M.

49. Sandusky was also arrested on December 7, 2011 and charged with an additional twelve (12) counts of various sex crimes against minors, all with an offense date of 1997. Attached hereto as Exhibit "N" is a true and correct copy of the Criminal Docket for *Commonwealth v. Sandusky*, No. CP-14-CR-0002421-2011.

50. Sandusky was found guilty and convicted of forty-five (45) of the charges against him after a jury trial. *See* Exhibits M and N.

51. The Underlying Action was filed on November 30, 2011 against Sandusky, The Second Mile and The Pennsylvania State University ("Penn State"). *See* Exhibit K.

52. The underlying plaintiff is identified as "John Doe A" ("Doe A") to protect his identity. *See* Exhibit K, ¶ 1.

53. Doe A alleges that he met Sandusky in 1992 when he was ten (10) years old through his participation in The Second Mile, a charity for children with absent or dysfunctional families. *See* Exhibit K, ¶¶ 6-8.

54. The Underlying Action alleges that Sandusky "recruited, groomed and coerced Plaintiff, showering him with gifts, travel, and privileges." *See* Exhibit K, ¶ 9.

55. The Underlying Action alleges that Doe A stayed at Sandusky's house, participated in activities at Penn State and The Second Mile, and traveled out of town with Sandusky. *See* Exhibit K, ¶ 10.

56. In particular, the Underlying Action alleges:

> Between 1992 and 1996, Sandusky sexually abused John Doe A. John Doe A was too young to have given any consent, and Sandusky's abuse was in fact unwanted and has caused substantial harm to John Doe A. John Doe A is presently under age 30.

Sandusky sexually abused John Doe A over one hundred times.

*See* Exhibit K, ¶¶ 11-12.

57.     Doe A further alleges that the sexual abuse occurred multiple times at multiple locations both in and out of state, at Penn State facilities and at Sandusky's home. *See* Exhibit K, ¶ 13.

58.     The Underlying Action alleges that "Sandusky threatened Plaintiff and threatened harm to Plaintiff's family if Plaintiff told anyone about the abuse.  This threat operated to silence Plaintiff and caused him to not be able to take any action until recently." *See* Exhibit K, ¶ 14.

59.     Count I of the Underlying Action alleges a claim for "Childhood Sexual Abuse and Vicarious Liability" against Sandusky and co-defendants The Second Mile and Penn State. *See* Exhibit K.

60.     Count I alleges that Sandusky "[f]rom 1992 to 1996, ... engaged in unpermitted, harmful and offensive sexual conduct and contact upon the person of Plaintiff, in violation of Pennsylvania state law." *See* Exhibit K, ¶ 45.

61.     Count I alleges that the underlying plaintiff suffers from emotional and physical injuries as a result of Sandusky's conduct. *See* Exhibit K, ¶ 49.

62.     Underlying plaintiff seeks compensatory and punitive damages against Sandusky and co-defendants in an amount in excess of $50,000, together with interest and costs, for Count I. *See* Exhibit K.

63.     Counts II through VII of the Underlying Action are directed at co-defendants The Second Mile and Penn State only. *See* Exhibit K.

768272.1

64.     Count VIII of the Underlying Action alleges a claim for "Civil Conspiracy to Endanger Children" against Sandusky and co-defendants The Second Mile and Penn State. *See* Exhibit K.

65.     Specifically, Count VIII alleges that the defendants "acted with a common purpose, and conspired to endanger the welfare of children, the including the Plaintiff, in violation of Pennsylvania law." *See* Exhibit K, ¶ 103.

66.     Count VIII further alleges that Sandusky "maintained silence" regarding his "sexual interest in children...so as to enable Sandusky to act on his sexual interest in children." *See* Exhibit K, ¶ 107.

67.     Count VIII alleges that the underlying plaintiff suffers from emotional and physical injuries as a result of Sandusky's conduct. *See* Exhibit K, ¶ 115.

68.     Underlying plaintiff seeks compensatory and punitive damages against Sandusky and co-defendants in an amount in excess of $50,000, together with interest and costs, for Count VIII. *See* Exhibit K.

## REQUEST FOR DECLARATORY RELIEF
### Count I
### (No Coverage for Criminal Proceedings)

69.     State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 68, inclusive, as if the same were fully set forth at length.

70.     The Policy provides limited persona liability coverage to a policyholder for a "claim or suit" that seeks "damages" for bodily injury caused by an occurrence. *See* Exhibits A through E.

71.     There is no provision for the defense of criminal charges against a policyholder in the State Farm Policy.

72.     State Farm has no duty to defend Sandusky for any criminal proceedings brought against him, including but not limited to the actions of *Commonwealth v. Sandusky*, No. CP-14-CR-0002422-2011 and *Commonwealth v. Sandusky*, No. CP-14-CR-0002421-2011, or the appeal of such actions.

WHEREFORE, State Farm seeks judgment that it has no duty to defend Defendant Gerald Sandusky for any criminal proceedings against him.

## Count II
### (No Occurrence)

73.     State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 72, inclusive, as if the same were fully set forth at length.

74.     The Policy provides coverage as follows:

**SECTION II – LIABILITY COVERAGES**
**COVERAGE L – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence,** we will:

1.      pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2.      provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence,** equals our limit of liability.

*See* Exhibits A through E (emphasis in original).

75.   The Policy defines "occurrence" as follows:

## DEFINITIONS

7.   **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a.   **bodily injury**; or

b.   **property damage**;

during the policy period.   Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

*See* Exhibits A through E (emphasis in original).

76.   Pursuant to Pennsylvania law, an accident, as used in the context of the "occurrence" definition, is an unexpected or fortuitous event.

77.   The Underlying Action alleges that Sandusky groomed the underlying plaintiff as a sexual abuse victim. *See* Exhibit K, ¶ 9.

78.   The Underlying Action alleges that Sandusky sexually assaulted the underlying plaintiff numerous times over a period of approximately four (4) years at various locations. *See* Exhibit K, ¶¶ 11-13.

79.   The Underlying Action further alleges that Sandusky threatened the underlying plaintiff in an attempt to silence him regarding the sexual abuse Sandusky subjected him to. *See* Exhibit K, ¶ 14.

80.   In addition, the Underlying Action alleges that Sandusky purposefully conspired to endanger children, i.e. the underlying plaintiff, in his efforts to sexually abuse the underlying plaintiff. *See* Exhibit K, ¶¶ 103, 107.

81.   The State Farm Policy only provides insurance coverage for bodily injury caused by an "occurrence".

82.   An "occurrence," as used in a liability policy, is an accident.   An accident is something that is unexpected and fortuitous.

83.   The Underlying Action plainly describes intentional actions taken by Sandusky.

84.   The allegations of the Underlying Action describe Sandusky's selection and grooming of underlying plaintiff for the purposes of sexually abusing him, a history of sexual abuse over the course of approximately four (4) years, and Sandusky's attempts to conceal such instances of sexual abuse.

85.   As such, the Underlying Action does not allege an "occurrence" as that term is defined by the Policy.

86.   The claims in the Underlying Action, therefore, do not fall within the Insuring Agreement of the Policy and State Farm has no duty to defend and/or indemnify Sandusky for the Underlying Action.

WHEREFORE, State Farm seeks judgment that it has no duty to defend and no duty to indemnify Defendant Gerald Sandusky for the claims of intentional conduct asserted in the Underlying Action.

## Count III
### (Intentional Acts Exclusion)

87.   State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 86 inclusive, as if the same were fully set forth at length.

88.   The Policy contains the following "intentional acts" exclusion:

1.   Coverage L and Coverage M do not apply to:

a.   **bodily injury** or **property damage**:

(1)   which is either expected or intended by the **insured**; or

768272.1

(2)    to any person or property which is the result of willful and malicious acts of an **insured**;

*See* Exhibits A through D (emphasis in original).

89.    Form FP-7955 modifies the Policy's intentional acts exclusion as follows:

1.    Coverage L and M do not apply to:

    a.    **bodily injury** or **property damage**:

        (1)    which is either expected or intended by the **insured**; or

        (2)    which is the result of willful and malicious acts of the **insured**.

*See* Exhibit E (emphasis in original).

90.    The allegations of the Underlying Action fall within the terms of the exclusion.

91.    The Underlying Action alleges that Sandusky sexually abused the underlying plaintiff for approximately four (4) years, beginning when he was ten (10) years old. *See* Exhibit K, ¶¶ 7, 11-12.

92.    The Underlying Action alleges bodily injury that falls within the intentional acts exclusion of the Policy and State Farm has no duty to defend and/or indemnify Sandusky for the Underlying Action.

WHEREFORE, State Farm seeks judgment that it has no duty to defend and no duty to indemnify Defendant Gerald Sandusky for the claims of intentional conduct asserted in the Underlying Action.

768272.1

## Count IV
### (Business Pursuits Exclusion)

93.     State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 92 inclusive, as if the same were fully set forth at length.

94.     The "business pursuits" exclusion provides as follows:

### SECTION II – EXCLUSIONS

1.      Coverage L and Coverage M do not apply to:

   b.      **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**.  This exclusion does not apply:

      (1)      to activities which are ordinarily incident to non-**business** pursuits; ...

*See* Exhibits A through E (emphasis in original).

95.     "Business" is defined in the Policy as follows:

### DEFINITIONS

2.      "**business**" means a trade, profession or occupation.  This includes farming.

*See* Exhibits A through E (emphasis in original).

96.     The Underlying Action alleges that Sandusky is the founder of and a principal in co-defendant organization The Second Mile.  *See* Exhibit K, ¶ 3.

97.     Sandusky is sued in the Underlying Action as an individual and "in his official capacity as a principal in Second Mile."  *See* Exhibit K, ¶ 3.

98.     Sandusky's operation of The Second Mile was a business pursuit.

99.     To the extent the allegations of the Underlying Action relate to Sandusky as "a principal" of The Second Mile, the Policy's business pursuits exclusion is triggered.

100.    The Underlying Action therefore alleges bodily injury that falls within the business pursuits exclusion of the Policy and State Farm has no duty to defend and/or indemnify Sandusky for the Underlying Action.

WHEREFORE, State Farm seeks judgment that it has no duty to defend and no duty to indemnify Defendant Gerald Sandusky for the claims against him in his official capacity at The Second Mile that are asserted in the Underlying Action.

## Count V
### (Punitive Damages)

101.    State Farm incorporates herein by reference the allegations set forth in paragraphs 1 through 100 inclusive, as if the same were fully set forth at length.

102.    As noted above, Coverage L of the Policy states that State Farm will "pay up to our limit of liability for the damages for which the insured is legally liable...." *See* Exhibits A through E.

103.    Under Pennsylvania law, punitive damages are not covered under insurance policies pursuant to Pennsylvania public policy.

104.    Counts I and VIII of the Underlying Action against Sandusky seek punitive damages. *See* Exhibit K, Counts I, VIII.

105.    To the extent punitive damages are awarded in the Underlying Action, State Farm has no duty to defend and/or indemnify Sandusky for such punitive damages.

WHEREFORE, State Farm seeks judgment that it has no duty to defend and no duty to indemnify Defendant Gerald Sandusky for any claims for punitive damages in the Underlying Action.

768272.1

## REQUEST FOR DECLARATORY RELIEF

106.   State Farm incorporates herein by reference the allegations set forth in paragraph 1 through 105 inclusive, as if the same were fully set forth at length.

107.   An actual and justiciable controversy exists concerning the rights and obligations of the parties under the State Farm Policy at issue with respect to the criminal proceedings against Sandusky and the Underlying Action.

108.   All parties have a claim or interest in the outcome of the declaratory relief sought by this action.

109.   State Farm is entitled to a declaration that is under no obligation to defend Defendant Gerald Sandusky for any criminal proceedings against him, including those currently in process.

110.   State Farm is entitled to a declaration that is under no obligation to defend Defendant Gerald Sandusky for the Underlying Action.

111.   State Farm is further entitled to a declaration that it has no duty to indemnify Defendant Gerald Sandusky for the Underlying Action.

WHEREFORE, Plaintiff, State Farm Fire and Casualty Company demands judgment as follows:

a.   A declaratory judgment that State Farm has no obligation to defend Gerald Sandusky for any criminal proceedings against him, including but not limited to *Commonwealth v. Sandusky*, No. CP-14-CR-0002422-2011 and *Commonwealth v. Sandusky*, No. CP-14-CR-0002421-2011 and any appeals;

b.   A declaratory judgment that State Farm has no obligation to defend Gerald Sandusky for the Underlying Action;

c.   A declaratory judgment that State Farm has no obligation to indemnify Gerald Sandusky for the Underlying Action; and

d.    Such other further relief as this Court deems just and proper.

Christie, Pabarue, Mortensen and Young,
A Professional Corporation

BY:    _____
Bradley J. Mortensen
PA ID No. 54558
bjmortensen@epmy.com

BY:    _____
Elizabeth A. Bartman
PA ID No. 205904
ebartman@cpmy.com

1880 J.F.K. Boulevard – 10th Floor
Philadelphia, PA 19103
Phone: (215) 587-1600
Fax: (215) 587-1699

Attorneys for Plaintiff, State Farm Fire and
Casualty Company

Dated: July 18, 2012

-20-

# EXHIBIT A
## to Complaint for Declaratory Judgment



# YOUR
# STATE FARM
# HOMEOWNERS
# POLICY

FP-7193
(6/86)

# TABLE OF CONTENTS

## DECLARATIONS

Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

|  | Begins on Page |
|---|---|
|  | 1 |
| AGREEMENT | 1 |
| DEFINITIONS | 2 |
| SECTION I - YOUR PROPERTY | 2 |
| COVERAGES | 2 |
| Coverage A - Dwelling | 4 |
| Coverage B - Personal Property | 4 |
| Coverage C - Loss of Use | 6 |
| Additional Coverages | 6 |
| Inflation Coverage | 8 |
| LOSSES INSURED | 10 |
| LOSSES NOT INSURED |  |
| CONDITIONS |  |
| SECTION II - YOUR LIABILITY | 12 |
| COVERAGES | 12 |
| Coverage L - Personal Liability | 13 |
| Coverage M - Medical Payments to Others | 13 |
| EXCLUSIONS | 15 |
| ADDITIONAL COVERAGES | 16 |
| CONDITIONS | 17 |
| SECTION I AND II - CONDITIONS | 18 |
| OPTIONAL PROVISIONS |  |

Includes copyrighted material of State Farm Fire and Casualty Company,
Copyright, State Farm Fire and Casualty Company, 1983.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

Printed in U.S.A.

FP-7193
(6/86)

# HOMEOWNERS POLICY - SPECIAL FORM 3

## AGREEMENT

We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations.**

Certain words and phrases are defined as follows:

1. **"bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. **Bodily injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

2. **"business"** means a trade, profession or occupation. This includes farming.

3. **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. **"insured"** means you and, if residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them.   However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. **"insured location"** means:

   a. the **residence premises**;

   b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

   e. vacant land owned by or rented to an **insured**. This does not include farm land;

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   g. individual or family cemetery plots or burial vaults of an **insured**;

   h. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

   i. 500 acres or less of farm land (without buildings) rented to others.

6. **"motor vehicle"**, when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle;**

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an **insured** and designed for recreational use off public roads, while off an **insured location.** A motorized golf cart while used for golfing purposes is not a **motor vehicle;**

d. a motorized bicycle, tricycle or similar type of equipment owned by an **insured** while off an **insured location;**

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c. or 6.d.

7. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury;** or

b. **property damage**

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

8. **"property damage"** means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not considered to be **property damage.**

9. **"residence employee"** means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises.** This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured.**

10. **"residence premises"** means the one, two, three or four-family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown in the **Declarations.**

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. We cover:

a. the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.** This includes structures attached to the dwelling;

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

c. wall-to-wall carpeting attached to the dwelling on the **residence premises;** and

d. outdoor antennas.

Except as specifically provided in the **SECTION I, ADDITIONAL COVERAGES,** for **Land,** we do not cover land or any costs required to replace, rebuild, stabilize or otherwise restore the land.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

a. not permanently attached to or otherwise forming a part of the realty;

b. used in whole or in part for **business** purposes; or

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE B - PERSONAL PROPERTY

1. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a

**residence employee**, while the property is in any other residence occupied by an **insured.**

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category.

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

b. $200 on property used or intended for use in a business, other than electronic data processing equipment or the recording or storage media used with that equipment.

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment.

e. $1,000 on trailers not used with watercraft.

f. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones.

g. $2,000 for loss by theft of firearms and related equipment.

h. $2,500 for loss by theft of silverware and goldware.

i. $3,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

j. $2,500 on any one article and $10,000 in the aggregate for loss by theft of Oriental rugs. Oriental rugs are any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article, whose principal value is derived from its color, design, quality of wool or silk, quality of weaving, condition and age. Oriental rugs include but are not limited to Persian (Iranian), Turkish, Caucasian and Turkoman, Chinese and Indian rugs.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do not cover those used solely for the service of the **insured location** and not licensed for use on public highways;

d. devices or instruments for the recording or reproduction of sound permanently installed in an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

3

h.  property rented or held for rental to others away from the **residence premises**;

i.  any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon an engine or motor propelled vehicle, whether attached or not;

j.  books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1.  **Additional Living Expense.** If a Loss Insured causes the **residence premises** to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required (a) to repair or replace the premises or (b) for your household to settle elsewhere, but not to exceed 12 months. This period of time is not limited by expiration of this policy.

2.  **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3.  **Prohibited Use.** If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1.  **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property. When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

2.  **Reasonable Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable cost you incur of repairing damage to covered property to protect the property from further damage or loss. This coverage does not increase the limit applying to the property being repaired.

3.  **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or Malicious Mischief or Theft. The limit for this coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4.  **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5.  **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered

FORM 3

property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

      (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

      (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured and the power source away from the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off an electrical switch unless caused by a Loss Insured.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Land.** We will pay up to $10,000 for the cost required to replace, rebuild, stabilize or otherwise restore the land necessary to support the insured dwelling sustaining a covered loss. This may increase the limit applying to the property.

11. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow.

FORM 3

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

12. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. perils described in **SECTION I - LOSSES IN-SURED. COVERAGE B - PERSONAL PROP-ERTY.** These perils apply to covered building and personal property for loss insured by this additional coverage;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations.**

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverages A and B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations.**

If during the term of this policy, the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

6

FORM 3

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes

other than bank notes, manuscripts, passports, tickets and stamps; or

         (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

   c. loss caused by theft that occurs away from the **residence premises** of:

      (1) property while at any other residence owned, rented to, or occupied by an **insured,** except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

      (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

      (3) trailers and campers designed to be pulled by or carried on a vehicle.

   If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow of** water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

    This peril does not include loss:

    a. to the system or appliance from which the water or steam escaped;

    b. caused by or resulting from freezing;

    c. caused by or resulting from water which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump

7

FORM 3

well or other type system designed to remove sub-surface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing;

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of electrical currents artificially generated. There is no coverage for loss to a tube, transistor, wafer, card, chip, integrated circuit or similar electronic circuitry and components.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for loss to the property described in Coverage A either consisting of, or directly and immediately caused by, one or more of the following:

a. collapse, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Collapse**;

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

e. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

8

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g.  wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

h.  rust, mold, or wet or dry rot;

i.  contamination;

j.  smog, smoke from agricultural smudging or industrial operations;

k.  settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

l.  birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through l. unless the loss is itself a Loss Not Insured by this Section.

2.  We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

a.  **Ordinance or Law,** meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

b.  **Earth Movement,** meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c.  **Water Damage,** meaning:

(1)  flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2)  water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3)  natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion, or theft resulting from water damage.

d.  **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e.  **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f.  **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by

9

the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do not insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs 1 and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

      (1) planning, zoning, development, surveying, siting;

      (2) design, specifications, workmanship, construction, grading, compaction;

      (3) materials used in construction or repair; or

      (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; nor

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to examinations under oath and subscribe the same; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so;

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

10

FORM 3

(6) an inventory of damaged or stolen personal property described in 2.c.;

(7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

(8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

a. Personal property and structures that are not buildings at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

b. Carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, at actual cash value, up to the applicable limit of liability, at the time of loss. We will not pay an amount exceeding that necessary to repair or replace;

c. Buildings under Coverage A at replacement cost at the time of loss without deduction for depreciation, subject to the following:

(1) We will not pay more than the $10,000 limit on Land as provided in **SECTION I, ADDITIONAL COVERAGES.**

(2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:

(a) the limit of liability under this policy applying to the building;

(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

(c) the amount actually and necessarily spent to repair or replace the damaged building.

(3) We will pay the actual cash value of the damage to the buildings, up to the policy limit, until actual repair or replacement is completed.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share

FORM 3

of the loss. Our share is that the applicable limit under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action can be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property. Any property we pay for or replace becomes our property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

 a. reach agreement with you;

 b. there is an entry of a final judgment; or

 c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

12. **Mortgage Clause.** The word "mortgagee" includes trustee:

 a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

 b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

  (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

  (2) pays any premium due under this policy on demand if you have neglected to pay the premium;

  (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

 c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

 d. If we pay the mortgagee for any loss and deny payment to you:

  (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

  (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

 e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

14. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any

12

FORM 3

claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the insured location with the permission of an insured;

2. to a person off the insured location, if the bodily injury:

   a. arises out of a condition on the insured location or the ways immediately adjoining;

   b. is caused by the activities of an insured;

   c. is caused by a residence employee in the course of the residence employee's employment by an insured; or

   d. is caused by an animal owned by or in the care of an insured; or

3. to a residence employee if the occurrence causing bodily injury occurs off the insured location and arises out of or in the course of the residence employee's employment by an insured.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. bodily injury or property damage:

      (1) which is either expected or intended by an insured; or

      (2) to any person or property which is the result of willful and malicious acts of an insured;

   b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-business pursuits;

      (2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

      (4) when the dwelling on the residence premises is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

   c. bodily injury or property damage arising out of the rendering or failing to render professional services;

   d. bodily injury or property damage arising out of any premises owned or rented to any insured which is not an insured location. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured;

   e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

      (1) an aircraft;

      (2) a motor vehicle owned or operated by or rented or loaned to any insured; or

      (3) a watercraft:

13

FORM 3

(a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**; or

(d) designated as an airboat, air cushion, jet ski or similar type of craft.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the negligent supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. the legal liability of any **insured** to:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

14

insured under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

    a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

    b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

    c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

    d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses. We pay:**

    a. expenses we incur and costs taxed against an **insured** in suits we defend;

    b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

    c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $50 per day for aiding us in the investigation or defense of claims or suits;

    d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

    e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others.**

    a. We will pay for **property damage** to property of others caused by an **insured**.

    b. We will not pay more than the smallest of the following amounts:

        (1) replacement cost at the time of loss;

        (2) full cost of repair; or

        (3) $500 in any one **occurrence**.

    c. We will not pay for **property damage**:

        (1) if insurance is otherwise provided in this policy;

        (2) caused intentionally by an **insured** who is 13 years of age or older;

        (3) to property owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

        (4) arising out of:

           (a) **business pursuits**;

           (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

           (c) the ownership, maintenance, or use of a **motor vehicle**; aircraft; or watercraft, including airboat, air cushion, jet ski, sailboard or similar type watercraft.

15

# SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss.** In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others**:

      (1) submit a sworn statement of loss to us within 60 days after the loss; and

      (2) exhibit the damaged property if within the **insured's** control;

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

FORM 3

# SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** Proof of mailing shall be sufficient proof of notice:

      (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

      (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

      (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

         (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

         (b) if the risk has changed substantially since the policy was issued.

         We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

      (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

   d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

FORM 3

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall sign and deliver all related papers and cooperate with us in a reasonable manner.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. **insured** includes:

   (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

# OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the **Declarations.**

**Option AI - Additional Insured.** The definition of **insured** in this policy includes the person or organization named in the **Declarations** as an additional insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A;

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BU - Business Pursuits.**

1. Section II applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator.

2. This option does not apply:

   a. to **bodily injury** or **property damage** arising out of **business** pursuits of the **insured** in connection with a **business**. This exclusion applies only if the **business** is owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. to **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

   (1) architectural, engineering or industrial design services;

   (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

   (3) beauty or barber services or treatment;

   c. to **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

   (1) to **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

18

FORM 3

(a) that of saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboat, air cushion, jet ski or similar type of craft;

owned or operated, or hired by or for the **insured** or employer or used by the **insured** for the purpose of instruction in the use thereof; or

(2) Under Coverage M to **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms.** Firearms and related equipment are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

1. We do not cover loss or damage caused by:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture; or

   f. rust, fouling or explosion of firearms.

2. We do not cover:

   a. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   b. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented.

3. In addition to limitations and exclusions otherwise applicable, the following also apply:

   a. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

   b. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit;

   c. our limits for loss by any covered peril except those in items a. and b. are those shown in the **Declarations**.

**Option HC - Home Computer.** The limit on electronic data processing equipment and the recording or storage media used with that equipment is increased to be the amount shown on the **Declarations** for this option. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

**Option IO - Incidental Business.** This option applies only to the incidental business occupancy on file with us.

1. Section I: **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This does not include electronic data processing equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the $200 special limit of liability on property used or intended for use in a **business**.

2. Section II: The **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. Section II: Exclusion 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or

holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

    (1) to activities which are ordinarily incidental to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

    (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

    (3) to the rental or holding for rental of a residence of yours:

        (a) on an occasional basis for exclusive use as a residence;

        (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

        (c) in part, as an incidental **business** or private garage;

    (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

    (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others.

4. This insurance does not apply to:

    a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

    b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

    c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data

processing, computer consulting or computer programming; or

    d. the legal liability of any **insured** to:

    (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

        (a) any **insured**;

        (b) any employee of any **insured**; or

        (c) any other person actually or apparently acting on behalf of any **insured**.

    (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

        (a) any **insured**;

        (b) any employee of any **insured**; or

        (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF – Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

1. We do not cover loss or damage caused by:

    a. mechanical breakdown; wear and tear; gradual deterioration;

    b. insects or vermin;

    c. inherent vice; or

FORM 3

d. seizure or destruction under quarantine or customs regulations.

2. In addition to limitations and exclusions otherwise applicable, the following also apply:

a. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

b. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; or

c. our limits for loss by any covered peril except those in items 2.a. and 2.b. are those shown in the **Declarations**.

**Option RC - Replacement Cost - Contents.** Under **SECTION I - CONDITIONS**, items a. and b. of the Loss Settlement Condition are replaced with the following:

a. (1) Fences and the following personal property at actual cash value at the time of loss:

(a) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

(b) articles whose age or history contribute substantially to their value including but not limited to, memorabilia, souvenirs and collectors items;

(c) property not useful for its intended purpose.

(2) We will not pay:

(a) an amount exceeding that necessary to repair or replace the property; or

(b) an amount in excess of the limit of liability applying to the property.

b. Other personal property, carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings, and other structures (ex-

cept fences) that are not buildings under Dwelling Extension, at the cost of repair or replacement at the time of loss without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

(a) replacement cost at time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

**Option SA - Merchandise Samples.**

1. Our limit for **business** property consisting of merchandise:

a. held as samples;

b. held for sale; or

c. held for delivery after sale;

is the amount shown on the **Declarations** for this option.

2. Coverage applies only when the property is contained:

a. in the described dwelling; or

b. in structures on the **residence premises.**

3. This limit is in addition to the Special Limit of Liability on **business** property.

**Option SG - Silverware Theft.** The theft limit on silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Philip C. Buffinton*

Secretary

*Edward B. Rust, Jr.*

President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

22

FORM 3

# EXHIBIT B
## to Complaint for Declaratory Judgment

**GUARANTEED REPLACEMENT
COST - DWELLING**



# YOUR
# STATE FARM
# HOMEOWNERS EXTRA 5
# POLICY

FP-7195
(6/86)

PRINTED
IN
U.S.A.

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

| | Begins on Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **SECTION I - YOUR PROPERTY** | |
| COVERAGES | 2 |
| Coverage A - Dwelling | 2 |
| Coverage B - Personal Property | 2 |
| Coverage C - Loss of Use | 4 |
| Additional Coverages | 4 |
| Inflation Coverage | 6 |
| Guaranteed Extra Coverage | 6 |
| LOSSES INSURED | 7 |
| LOSSES NOT INSURED | 9 |
| CONDITIONS | 11 |
| **SECTION II - YOUR LIABILITY** | |
| COVERAGES | 13 |
| Coverage L - Personal Liability | 13 |
| Coverage M - Medical Payments to Others | 14 |
| EXCLUSIONS | 14 |
| ADDITIONAL COVERAGES | 16 |
| CONDITIONS | 17 |
| **SECTION I AND II - CONDITIONS** | 18 |
| **OPTIONAL PROVISIONS** | 19 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-7195
(6/86)

Printed in U.S.A.

# HOMEOWNERS POLICY - EXTRA FORM 5

## AGREEMENT

We agree to provide the insurance described in this policy. You agree to pay premiums when due and comply with the provisions of this policy.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. **"bodily injury"** means bodily harm, sickness or disease. This includes required care, loss of services and death resulting therefrom. **Bodily injury** does not include any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person. It also does not include the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person.

2. **"business"** means a trade, profession or occupation. This includes farming.

3. **"Declarations"** means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

4. **"insured"** means you and, if residents of your household:

   a. your relatives;

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner is not an **insured**;

   d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. **"insured location"** means:

   a. the **residence premises**;

   b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

   c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

   d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

   e. vacant land owned by or rented to an **insured**. This does not include farm land;

   f. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

   g. individual or family cemetery plots or burial vaults of an **insured**;

   h. any part of a premises occasionally rented to an **insured** for other than **business** purposes;

   i. 500 acres or less of farm land (without buildings) rented to others.

6. **"motor vehicle"**, when used in Section II of this policy, means:

   a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

FP-7195
(6/86)

1

Printed in U.S.A.

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle;**

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an **insured** and designed for recreational use off public roads, while off an **insured location.** A motorized golf cart while used for golfing purposes is not a **motor vehicle;**

d. a motorized bicycle, tricycle or similar type of equipment owned by an **insured** while off an **insured location;**

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c., or 6.d.

7. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury;** or

b. **property damage**

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence.**

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not considered to be **property damage.**

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises.** This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured.**

10. "**residence premises**" means the one, two, three or four-family dwelling, other structures, and grounds or that part of any other building where you reside and which is shown in the **Declarations.**

# SECTION I - COVERAGES

## COVERAGE A - DWELLING

1. We cover:

a. the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations.** This includes structures attached to the dwelling;

b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises;**

c. wall-to-wall carpeting attached to the dwelling on the **residence premises;** and

d. outdoor antennas.

Except as specifically provided in **SECTION I, ADDITIONAL COVERAGES,** for Land, we do not cover land or any costs required to replace, rebuild, stabilize or otherwise restore the land.

2. **Dwelling Extension.** We cover other structures on the **residence premises,** separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

We do not cover other structures:

a. not permanently attached to or otherwise forming a part of the realty;

b. used in whole or in part for **business** purposes; or

c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

## COVERAGE B - PERSONAL PROPERTY

1. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured.** At your request, we will also cover personal property owned by a guest or a

**residence employee**, while the property is in any other residence occupied by an insured.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, bank notes, coins and medals.

b. $200 on property used or intended for use in a **business**, other than electronic data processing equipment or the recording or storage media used with that equipment.

c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps.

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment.

e. $1,000 on trailers not used with watercraft.

f. $2,000 for loss by theft of firearms and related equipment.

g. $2,500 for loss by theft of silverware and goldware.

h. $3,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the pur-

pose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

i. $2,500 on any one article and $10,000 in the aggregate for loss by theft of Oriental rugs. Oriental rugs are any handwoven silk or wool rug, carpet, tapestry, wall-hanging or other similar article, whose principal value is derived from its color, design, quality of wool or silk, quality of weaving, condition and age. Oriental rugs include but are not limited to Persian (Iranian), Turkish, Caucasian and Turkoman, Chinese and Indian rugs.

See **ADDITIONAL COVERAGES** for special limits on jewelry, watches, fur garments and garments trimmed with fur; precious and semi-precious stones; gold other than goldware, silver other than silverware, and platinum.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those used solely for the service of the **insured location** and not licensed for use on public highways;

d. devices or instruments for the recording or reproduction of sound permanently installed in an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders and other tenants, except property of roomers and boarders related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon an engine or motor propelled vehicle, whether attached or not;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** If a Loss Insured causes the **residence premises** to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required (a) to repair or replace the premises or (b) for your household to settle elsewhere, but not to exceed 12 months. This period of time is not limited by the expiration of this policy.

2. **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

3. **Prohibited Use.** If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expense is included in the limit applying to the damaged property. When the amount payable for the property damage plus the debris removal expense exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

2. **Reasonable Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable cost you incur of repairing damage to covered property to protect the property from further damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or Malicious Mischief or Theft. The limit for this coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for direct loss from any cause. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered

property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

   a. We will pay up to $1,000 for:

      (1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

      (2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

      (3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

      No deductible applies to this coverage.

      We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instrument in the same loss.

   b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

   c. Defense:

      (1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

      (2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

      (3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured and the power source away from the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

   a. removal of a plug from an electrical outlet; or

   b. turning off of an electrical switch unless caused by a Loss Insured.

   This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are insured for accidental direct physical loss or damage.

   We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin, inherent vice, or seizure or destruction under quarantine or customs regulations.

   In addition to limitations and exclusions otherwise applicable, the following also apply:

   a. our limit for loss by any Coverage B peril except theft shall be the limit stated in the **Declarations** for Coverage B, plus $2,500;

5

directly or
ich results
n the **resi-**
n must be
urce away
energized.
applying to

xtended to
erated units
power fail-
re or power
ns must be
rther dam-
or mechan-

et; or

caused by a

applying to

information
ction with a
This cover-
cable. How-
d regardless
tion.

arments and
emi-precious
other than
ccidental di-

y mechanical
ioration, in-
destruction

therwise ap-

peril except
Declarations

b. our limit for loss by theft and any covered peril, ex-
cept those in item a., shall be $1,000 on any one
article and $2,500 in the aggregate.

11. **Land.** We will pay up to $10,000 for the cost required
to replace, rebuild, stabilize or otherwise restore the
land necessary to support the insured dwelling sustain-
ing a covered loss. This may increase the limit applying
to the property.

12. **Volcanic Action.** We cover direct physical loss to a
covered building or covered property contained in a
building resulting from the eruption of a volcano when
the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or
particulate matter which has caused direct physical loss
to a covered building or covered property contained in
a building.

One or more volcanic eruptions that occur within a
72-hour period shall be considered one volcanic
eruption.

This coverage does not increase the limit applying to
the damaged property.

13. **Collapse.** We insure for direct physical loss to covered
property involving collapse of a building or any part of
a building caused only by one or more of the following:

a. perils described in **SECTION I — LOSSES IN-
SURED, COVERAGE B — PERSONAL PROP-
ERTY.** These perils apply to covered building and
personal property for loss insured by this additional
coverage;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on
a roof; or

f. use of defective material or methods in con-
struction, remodeling or renovation if the collapse
occurs during the course of the construction, re-
modeling or renovation.

Loss to an awning, fence, patio, pavement, swimming
pool, underground pipe, flue, drain, cesspool, septic
tank, foundation, retaining wall, bulkhead, pier, wharf
or dock is not included under items b., c., d., e., and f.
unless the loss is a direct result of the collapse of a
building.

Collapse does not include settling, cracking, shrinking,
bulging or expansion.

This coverage does not increase the limit applying to
the damaged property.

**INFLATION COVERAGE.**

The limits of liability shown in the **Declarations** for Cover-
ages A and B will be increased at the same rate as the in-
crease in the Inflation Coverage Index shown in the
**Declarations.**

To find the limits on a given date:

1. divide the Index on that date by the Index as of the ef-
fective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for
Coverages A and B separately.

The limits of liability will not be reduced to less than the
amounts shown in the **Declarations.**

If during the term of this policy, the Coverage A limit of li-
ability is changed at your request, the effective date of this
Inflation Coverage provision is changed to coincide with the
effective date of such change.

**GUARANTEED EXTRA COVERAGE**

We will settle covered losses to the dwelling under Cover-
age A and other building structures under Dwelling Exten-
sion at replacement cost without regard to the limit of
liability, subject to the **Loss Settlement** provisions in
**SECTION I - CONDITIONS.**

Except as specifically provided in **SECTION I, ADDI-
TIONAL COVERAGES,** for Land, we will not pay for land

or any costs required to replace, rebuild, stabilize or otherwise restore land.

**Report Increased Values.**

You must notify us within 90 days of the start of any new building valued at $5,000 or more or any additions to or re-modeling of buildings which increase their values by $5,000 or more and pay any additional premium due for the increase in value. If you fail to notify us within 90 days, our payment will not exceed the limit of liability applying to the building. See **SECTION I - CONDITIONS - Loss Settlement** for additional provisions.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1.   **Fire or lightning.**

2.   **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

     This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3.   **Explosion.**

4.   **Riot or civil commotion.**

5.   **Aircraft,** including self-propelled missiles and spacecraft.

6.   **Vehicles.**

7.   **Smoke,** meaning sudden and accidental damage from smoke.

     This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8.   **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9.   **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

     This peril does not include:

     a.   loss of a precious or semi-precious stone from its setting;

     b.   loss caused by theft:

          (1)   committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

          (2)   in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

          (3)   from the part of a **residence premises** rented to others:

               (a)   caused by a tenant, members of the tenant's household, or the tenant's employees;

               (b)   of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

               (c)   of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

               (d)   of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water which backs up through sewers or drains or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove sub-surface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing;

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of electrical currents artificially generated. There is no coverage for loss to a tube, transistor, wafer, card, chip, integrated circuit or similar electronic circuitry and components.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

8

FORM 5

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A either consisting of, or directly and immediately caused by, one or more of the following:

   a. collapse, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Collapse;**

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

      (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time and results in deterioration, rust, mold, or wet or dry rot. If loss is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. rust, mold, or wet or dry rot;

   i. contamination;

   j. smog, smoke from agricultural smudging or industrial operations;

   k. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings;

   l. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any ensuing loss from items a. through l. unless the ensuing loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss:

   a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

   b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth move-

9

ment includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I, ADDITIONAL COVERAGES** for **Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials resulting from earth movement.

c. **Water Damage,** meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water which backs up through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion, or theft resulting from water damage.

d. **Neglect,** meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War,** including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard,** meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in Paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

However, we do insure for any ensuing loss from items a. and b. unless the ensuing loss is itself a Loss Not Insured by this Section.

FORM 5

# SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; nor

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to examinations under oath and subscribe the same; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so;

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. (1) The following personal property at actual cash value at the time of loss:

      (a) antiques, fine arts, painting, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (b) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items;

      (c) property not useful for its intended purpose.

      (2) We will not pay:

      (a) an amount exceeding that necessary to repair or replace the property; or

      (b) an amount in excess of the limit of liability applying to the property.

   b. Other personal property and carpeting, domestic appliances, awnings and outdoor antennas whether

11

FORM 5

or not attached to buildings at replacement cost without deduction for depreciation, subject to the following:

(1) We will pay the cost of repair or replacement but not exceeding the smallest of the following amounts:

    (a) replacement cost at time of loss;

    (b) the full cost of repair;

    (c) any special limit of liability described in the policy; or

    (d) any applicable Coverage A or Coverage B limit of liability.

(2) Loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis.

c. Buildings under Coverage A and other structures under Dwelling Extension at replacement cost without deduction for depreciation, subject to the following:

(1) We will not pay more than the $10,000 limit on Land as provided in **SECTION I, ADDITIONAL COVERAGES.**

(2) We will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smaller of the following amounts:

    (a) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or

    (b) the amount actually and necessarily spent to repair or replace the damaged building.

(3) We will pay the actual cash value of the damage to the buildings or other structures, up to the policy limit, until actual repair or replacement is completed.

(4) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings or other structures on an actual cash value basis and then make claim within 180 days after loss for

any additional liability on a replacement cost basis.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

    a. repair or replace any part to restore the pair or set to its value before the loss; or

    b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

FORM 5

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property. Any property we pay for or replace becomes our property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a. reach agreement with you;

    b. there is an entry of a final judgment; or

    c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an **insured.**

12. **Mortgage Clause.** The word "mortgagee" includes trustee.

    a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

        (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

        (2) pays any premium due under this policy on demand if you have neglected to pay the premium;

        (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

    d. If we pay the mortgagee for any loss and deny payment to you:

        (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

        (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

14. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

FORM 5

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

# SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. **bodily injury** or **property damage**:

      (1) which is either expected or intended by an **insured**; or

      (2) to any person or property which is the result of willful and malicious acts of an **insured**;

   b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-**business** pursuits;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an office, school, studio or private garage;

      (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

   c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

   d. **bodily injury** or **property damage** arising out of any premises owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

   e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

      (1) an aircraft;

      (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

      (3) a watercraft:

         (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

14

FORM 5

(b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**; or

(d) designated as an airboat, air cushion, jet ski or similar type of craft.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the negligent supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**;

i. the legal liability of any **insured** to:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to **property damage** caused by fire, smoke or explosion;

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit

15

FORM 5

of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

   a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses. We pay:**

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $50 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to **you** or any other **insured**.

3. **Damage to Property of Others.**

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an **insured** who is 13 years of age or older;

      (3) to property owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

      (4) arising out of:

         (a) **business pursuits**;

         (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

         (c) the ownership, maintenance, or use of a **motor vehicle**; aircraft; or watercraft, including airboat, air cushion, jet ski, sail board or similar type watercraft.

16

FORM 5

# SECTION II - CONDITIONS

1. **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is our limit for all damages from each **occurrence** regardless of the number of **insureds,** claims made or persons injured.

   The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance.** This insurance applies separately to each **insured.** This condition shall not increase our limit of liability for any one **occurrence.**

3. **Duties After Loss.** In case of an accident or **occurrence,** the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured;**

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence;** and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence;**

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured;**

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others:**

      (1) submit a sworn statement of loss to us within 60 days after the loss; and

      (2) exhibit the damaged property if within the **insured's** control;

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury.**

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured.** Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by noti-

fying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

   (b) if the risk has changed substantially since the policy was issued.

   We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

   d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Non-Renewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

FORM 5

8. **Subrogation.** An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

   If an assignment is sought, an insured shall sign and deliver all related papers and cooperate with us in a reasonable manner.

   Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. **insured** includes:

   (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

Each Optional Provision applies only as indicated in the **Declarations.**

**Option AI - Additional Insured.** The definition of **insured** in this policy includes the person or organization named in the **Declarations** as an additional insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A;

2. Section II - Coverages L and M but only with respect to the **residence premises.** This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations.**

**Option BU - Business Pursuits.**

1. Section II applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator.

2. This option does not apply:

   a. to **bodily injury** or **property damage** arising out of **business** pursuits of the **insured** in connection with a **business.** This exclusion applies only if the **business** is owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. to **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

   (1) architectural, engineering or industrial design services;

   (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

   (3) beauty or barber services or treatment;

   c. to **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

   d. when the **insured** is a member of the faculty or teaching staff of a school or college:

   (1) to **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

19

FORM 5

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboat, air cushion, jet ski or similar type of craft;

owned or operated, or hired by or for the **insured** or employer or used by the **insured** for the purpose of instruction in the use thereof; or

(2) Under Coverage M to **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured.**

**Option FA - Firearms.** Firearms and related equipment are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations.** The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

1. We do not cover loss or damage caused by:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. any process of refinishing, renovating, or repairing;

   d. dampness of atmosphere or extremes of temperatures;

   e. inherent defect or faulty manufacture; or

   f. rust, fouling or explosion of firearms.

2. We do not cover:

   a. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

   b. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented.

3. In addition to limitations and exclusions otherwise applicable, the following also apply:

a. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

b. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit;

c. our limits for loss by any covered peril except those in items a. and b. are those shown in the **Declarations.**

**Option HC - Home Computer.** The limit on electronic data processing equipment and the recording or storage media used with that equipment is increased to be the amount shown on the **Declarations** for this option. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home.

**Option IO - Incidental Business.** This option applies only to the incidental **business** occupancy on file with us.

1. Section I: **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This does not include electronic data processing equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

   The Option IO limits are shown in the **Declarations.** The first limit applies to property on the **residence premises.** The second limit applies to property while off the **residence premises.** These limits are in addition to the $200 special limit of liability on property used or intended for use in a **business.**

2. Section II: The **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business.**

3. Section II: Exclusion 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or

20

FORM 5

holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incidental to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

    (a) on an occasional basis for exclusive use as a residence;

    (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

    (c) in part, as an incidental **business** or private garage;

(4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others.

4. This insurance does not apply to:

    a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

    b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

    c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data

processing, computer consulting or computer programming; or

    d. the legal liability of any **insured** to:

        (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

            (a) any **insured**;

            (b) any employee of any **insured**; or

            (c) any other person actually or apparently acting on behalf of any **insured**.

        (2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

            (a) any **insured**;

            (b) any employee of any **insured**; or

            (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Under **SECTION I - ADDITIONAL COVERAGES**, item 10. is changed as follows:

1. the "$1,000" limit is replaced with the first amount shown in the **Declarations** for this option;

2. the "$2,500" limit is replaced with the second amount shown in the **Declarations** for this option.

**Option SA - Merchandise Samples.**

1. Our limit for **business** property consisting of merchandise:

    a. held as samples;

    b. held for sale; or

    c. held for delivery after sale;

FORM 5

is the amount shown on the **Declarations** for this option.

2. Coverage applies only when the property is contained:

   a.  in the described dwelling; or

   b.  in structures on the **residence premises**.

3. This limit is in addition to the Special Limit of Liability on **business** property.

**Option SG - Silverware Theft.** The theft limit on silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Laura P. Sullivan*

Secretary

*Edward B Rust Jr*

President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FORM 5

# EXHIBIT C
## to Complaint for Declaratory Judgment

FP-7923
(12/90)



# YOUR
# STATE FARM
# HOMEOWNERS
# POLICY

FP-7923
(12/90)

PRINTED
IN
U.S.A.

This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

## TABLE OF CONTENTS

### DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

**Begins on Page**

**DECLARATIONS CONTINUED** — 1

**DEFINITIONS** — 1

**SECTION I - YOUR PROPERTY**
COVERAGES — 3
    Coverage A - Dwelling — 3
    Coverage B - Personal Property — 3
    Coverage C - Loss of Use — 4
    Additional Coverages — 5
    Inflation Coverage — 7
LOSSES INSURED — 7
LOSSES NOT INSURED — 9
CONDITIONS — 11

**SECTION II - YOUR LIABILITY**
COVERAGES — 14
    Coverage L - Personal Liability — 14
    Coverage M - Medical Payments to Others — 14
    Additional Coverages — 14
EXCLUSIONS — 15
CONDITIONS — 17

**SECTION I AND II - CONDITIONS** — 18

**OPTIONAL PROVISIONS** — 19

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.

FP-7923
(12/90)

Printed in U.S.A.

# HOMEOWNERS POLICY - SPECIAL FORM 3
## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you and the members of your household have not had any insured losses, whether paid or not, that would have been covered under the terms of this or a similar policy; and

2. Insurance History: no insurance company has cancelled or refused to renew your homeowners or fire insurance.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. "**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

2. "**business**" means a trade, profession or occupation. This includes farming.

3. "**Declarations**" means the policy **Declarations**, any amended **Declarations**, the most recent renewal notice or certificate, an Evidence of Insurance form, or any endorsement changing any of these.

4. "**insured**" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "**insured**" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or watercraft must be owned by you or a person included in 4.a. or 4.b. A person or organization using or having custody of these animals or watercraft in the course of a **business**, or without permission of the owner, is not an **insured**; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "**insured location**" means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. vacant land owned by or rented to an **insured**. This does not include farm land;

f. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

g. individual or family cemetery plots or burial vaults of an **insured**;

h. any part of a premises occasionally rented to an **insured** for other than **business** purposes; and

i. 500 acres or less of farm land (without buildings) rented to others.

6. "**motor vehicle**", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an **insured** and designed for recreational use off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;

d. a motorized bicycle, tricycle or similar type of equipment owned by an **insured** while off an **insured location**; and

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c. or 6.d.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

a. the one, two, three or four-family dwelling, other structures, and grounds; or

b. that part of any other building;

where you reside and which is shown in the **Declarations**.

2                                              FORM 3

## SECTION I - COVERAGES

### COVERAGE A - DWELLING

1. We cover:

    a. the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**. This includes structures attached to the dwelling;

    b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

    c. wall-to-wall carpeting attached to the dwelling on the **residence premises**; and

    d. outdoor antennas.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

    We do not cover other structures:

    a. not permanently attached to or otherwise forming a part of the realty;

    b. used in whole or in part for **business** purposes; or

    c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. Except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Land,** we do not cover land, including the land necessary to support any Coverage A property. We do not cover any costs required to replace, rebuild, stabilize, or otherwise restore the land, nor do we cover the costs of repair techniques designed to compensate for or prevent land instability.

### COVERAGE B - PERSONAL PROPERTY

1. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals;

b. $1,000 on property used or intended for use in a **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

Electronic data processing equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps;

d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,000 on trailers not used with watercraft;

3

f.  $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

g.  $2,500 for loss by theft of firearms;

h.  $2,500 for loss by theft of silverware and goldware;

i.  $5,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

j.  $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2.  **Property Not Covered.** We do not cover:

a.  articles separately described and specifically insured in this or any other insurance;

b.  animals, birds or fish;

c.  any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1)  used solely to service the **insured location**; or

(2)  designed for assisting the handicapped;

d.  devices or instruments for the recording or reproduction of sound permanently installed in an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e.  aircraft and parts;

f.  property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g.  property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h.  property rented or held for rental to others away from the **residence premises**;

i.  any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon an engine or motor propelled vehicle, whether attached or not;

j.  books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k.  recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1.  **Additional Living Expense.** If a Loss Insured causes the **residence premises** to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required (a) to repair or replace the premises or (b) for your household to settle elsewhere, but not to exceed 12 months. This period of time is not limited by expiration of this policy.

2.  **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

4

FORM 3

3. **Prohibited Use.** If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

2. **Temporary Repairs.** If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants.** We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or Malicious Mischief or Theft. The limit for this coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed.** Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

a. We will pay up to $1,000 for:

(1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of **business** pursuits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

FORM 3

the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption.** We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products.** Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Land.** If a single event results in both a Loss Insured to the insured dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land. This Additional Coverage applies only to the land necessary to support that part of the insured dwelling sustaining the Loss Insured.

The **SECTION I - LOSSES NOT INSURED** reference to earth movement does not apply to the loss of land stability provided under this Additional Coverage.

11. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

This coverage does not increase the limits applying to the damaged property.

12. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY**. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

b. hidden decay;

c. hidden insect or vermin damage;

d. weight of contents, equipment, animals or people;

e. weight of ice, snow, sleet or rain which collects on a roof; or

6

FORM 3

f.  use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is a direct result of the collapse of a building.

Collapse does not include settling, cracking, shrinking, bulging or expansion.

This coverage does not increase the limit applying to the damaged property.

13. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises**, when the keys to those locks are a part of a covered theft loss.

No deductible applies to this coverage.

14. **Temporary Living Expense Allowance.** If the **residence premises** becomes uninhabitable because of a loss caused by earthquake, landslide or volcanic explosion, or if a civil authority prohibits your use of the **residence premises** because an earthquake, landslide or volcanic explosion has occurred, we will pay up to $2,000 to cover the necessary increase in cost which you incur to maintain your standard of living.

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED**.

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED**:

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when

The **SECTION I - LOSSES NOT INSURED** references to earthquake, landslide and volcanic explosion do not apply to this Additional Coverage.

This coverage is excess over any other valid and collectible insurance which is in force at the time of the loss.

No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverages A and B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

# SECTION I - LOSSES INSURED

the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7

FORM 3

**7. Smoke**, meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

**8. Vandalism or malicious mischief**, meaning only willful and malicious damage to or destruction of property.

**9. Theft**, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

   (1) committed by an **insured** or by any other person regularly residing on the **insured location**. Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured**;

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   (3) from the part of a **residence premises** rented to others:

     (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

     (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

     (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

     (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the **residence premises** of:

   (1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

   (2) watercraft of all types, including their furnishings, equipment and outboard motors; or

   (3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

**10. Falling objects**. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

**11. Weight of ice, snow or sleet** which causes damage to property contained in a building.

**12. Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs

8

FORM 3

over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating or air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

## SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse**;

b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

(1) maintain heat in the building; or

(2) shut off the water supply and drain the system and appliances of water;

c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement,

patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is completed and occupied;

e. vandalism and malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

f. continuous or repeated seepage or leakage of water or steam from a:

(1) heating, air conditioning or automatic fire protective sprinkler system;

(2) household appliance; or

(3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

9                                                          FORM 3

If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect and mechanical breakdown;

h. corrosion, electrolysis or rust;

i. mold, or wet or dry rot;

j. contamination;

k. smog, smoke from agricultural smudging or industrial operations;

l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; or

m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials which are part of the dwelling resulting from earth movement, provided the resulting loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the **insured** to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear

FORM 3

weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault; or

b. defect, weakness, inadequacy, fault or unsoundness in:

   (1) planning, zoning, development, surveying, siting;

   (2) design, specifications, workmanship, construction, grading, compaction;

   (3) materials used in construction or repair; or

   (4) maintenance;

   of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises**.

However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability**. Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss**. After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the

inventory all bills, receipts and related documents that substantiate the figures in the inventory;

d. as often as we reasonably require:

   (1) exhibit the damaged property;

   (2) provide us with records and documents we request and permit us to make copies;

   (3) submit to and subscribe, while not in the presence of any other **insured**:

      (a) statements; and

      (b) examinations under oath; and

   (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

   (1) the time and cause of loss;

FORM 3

    (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

    (3) other insurance which may cover the loss;

    (4) changes in title or occupancy of the property during the term of this policy;

    (5) specifications of any damaged building and detailed estimates for repair of the damage;

    (6) an inventory of damaged or stolen personal property described in 2.c.;

    (7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

    (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

  a. We will pay actual cash value at the time of loss for:

    (1) personal property and structures that are not buildings; and

    (2) carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings.

    However, we will not pay an amount exceeding the applicable limit of liability or an amount exceeding that necessary to repair or replace the property.

  b. We will pay the cost to repair or replace buildings under Coverage A, subject to the following:

    (1) until actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings, up to the policy limit, not to exceed the replacement cost of the damaged part of the buildings for equivalent construction and use on the same premises;

    (2) you must make claim within 180 days after the loss for any additional payment on a replacement cost basis.

Any additional payment is limited to the amount you actually and necessarily spend to repair or replace the damaged buildings with equivalent construction and for equivalent use on the same premises;

    (3) we will not pay more than the $10,000 limit on land as provided in **SECTION I - ADDITIONAL COVERAGES**; and

    (4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building unless specifically provided under this policy or as may be provided by endorsement to this policy.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

  a. repair or replace any part to restore the pair or set to its value before the loss; or

  b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the

FORM 3

amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property. Any property we pay for or replace becomes our property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

    a.  reach agreement with you;

    b.  there is an entry of a final judgment; or

    c.  there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

12. **Mortgage Clause.** The word "mortgagee" includes trustee:

    a.  If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

    b.  If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

    (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

    (2) pays any premium due under this policy on demand if you have neglected to pay the premium; or

    (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

    c.  If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

    d.  If we pay the mortgagee for any loss and deny payment to you:

    (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

    (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

    e.  Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

14. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

13

FORM 3

# SECTION II - LIABILITY COVERAGES

**COVERAGE L - PERSONAL LIABILITY**

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

**COVERAGE M - MEDICAL PAYMENTS TO OTHERS**

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

**SECTION II - ADDITIONAL COVERAGES**

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**:

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

14

FORM 3

3

(2) caused intentionally by an **insured** who is 13 years of age or older;

(3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

(4) arising out of:

   (a) **business** pursuits;

(b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

(c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sailboard or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

  a. **bodily injury** or **property damage**:

    (1) which is either expected or intended by an **insured**; or

    (2) to any person or property which is the result of willful and malicious acts of an **insured**;

  b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

    (1) to activities which are ordinarily incident to non-**business** pursuits;

    (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

    (3) to the rental or holding for rental of a residence of yours:

      (a) on an occasional basis for the exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

    (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

    (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

  c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

  d. **bodily injury** or **property damage** arising out of any premises owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

  e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

    (1) an aircraft;

    (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

    (3) a watercraft:

      (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

      (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

      (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

      (d) designated as an airboat, air cushion, or similar type of craft; or

FORM 3

(e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

(1) the entrustment by any **insured** to any person;

(2) the supervision by any **insured** of any person;

(3) any liability statutorily imposed on any **insured**; or

(4) any liability assumed through an unwritten or written agreement by any **insured**;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or **motor vehicle** (or any other motorized land conveyance) which is not covered under Section II of this policy;

g. **bodily injury** or **property damage** caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. **bodily injury** to you or any **insured** within the meaning of part a. or b. of the definition of **insured**.

This exclusion also applies to any claim made or suit brought against any **insured** to share damages with or repay someone else who may be obligated to pay damages because of the **bodily injury**;

i. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age; or

j. **bodily injury** or **property damage** arising out of an **insured's** participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

a. liability:

(1) for your share of any loss assessment charged against all members of an association of property owners; or

(2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a **business** of the **insured**;

b. **property damage** to property owned by any **insured**;

c. **property damage** to property rented to, occupied or used by or in the care of any **insured**. This exclusion does not apply to property damage caused by fire, smoke or explosion;

16

FORM 3

d. **bodily injury** to a person eligible to receive any benefits required to be provided or voluntarily provided by an **insured** under a workers' compensation, non-occupational disability, or occupational disease law;

e. **bodily injury** or **property damage** for which an **insured** under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to **bodily injury**:

a. to a **residence employee** if it occurs off the **insured location** and does not arise out of or in the course of the **residence employee's** employment by an **insured**;

b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

d. to a person other than a **residence employee** of an **insured**, regularly residing on any part of the **insured location**.

# SECTION II - CONDITIONS

1. **Limit of Liability**. The Coverage L limit is shown in the **Declarations**. This is our limit for all damages from each **occurrence** regardless of the number of **insureds**, claims made or persons injured.

   The Coverage M limit is shown in the **Declarations**. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

2. **Severability of Insurance**. This insurance applies separately to each **insured**. This condition shall not increase our limit of liability for any one **occurrence**.

3. **Duties After Loss**. In case of an accident or **occurrence**, the **insured** shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and **insured**;

      (2) reasonably available information on the time, place and circumstances of the accident or **occurrence**; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or **occurrence**;

   c. at our request, assist in:

      (1) making settlement;

      (2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an **insured**;

      (3) the conduct of suits and attend hearings and trials; and

      (4) securing and giving evidence and obtaining the attendance of witnesses;

   d. under the coverage - **Damage to Property of Others**:

      (1) submit a sworn statement of loss to us within 60 days after the loss; and

      (2) exhibit the damaged property if within the **insured's** control; and

   e. the **insured** shall not, except at the **insured's** own cost, voluntarily make payments, assume obligations

17

FORM 3

or incur expenses. This does not apply to expense for first aid to others at the time of the **bodily injury**.

4. **Duties of an Injured Person.- Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

   a. give us written proof of claim, under oath if required, as soon as practicable;

   b. execute authorization to allow us to obtain copies of medical reports and records; and

   c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an **insured** or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

   No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We

may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

FORM 3

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

   (b) if the risk has changed substantially since the policy was issued.

We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

(4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

c.  When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d.  The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations.** The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

The following Optional Policy Provisions are subject to all the terms and provisions of this policy, unless otherwise indicated in the terms of the option.

Each Optional Policy Provision applies only as indicated in the **Declarations.**

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a.  sign and deliver all related papers;

b.  cooperate with us in a reasonable manner; and

c.  do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

a.  we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b.  **insured** includes:

   (1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises;** and

   (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization named in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

FORM 3

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property**.

**COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability**, item b. is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits**.

Section II - Exclusion 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

   while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

   b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) architectural, engineering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

   (1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

      (a) draft or saddle animals, including vehicles for use with them; or

      (b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal cumbustion engine as the primary source of propulsion;

   owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

   (2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

20

FORM 3

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer**. The Section I - Special Limits of Liability for electronic data processing equipment and the recording or storage media used with that equipment is increased to be the amount shown on the **Declarations** for this option.

**Option IO - Incidental Business**. The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. Section I: **COVERAGE B - PERSONAL PROPERTY** is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**.

The second limit applies to property while off the **residence premises**. These limits are in addition to the Section I, **COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability** on property used or intended for use in a **business**.

2. Section II: The **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. Section II: Exclusion 1.b. of Coverage L and Coverage M is replaced with the following:

b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

(1) to activities which are ordinarily incidental to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

(2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental **business** or private garage;

(4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others.

FORM 3

4. This insurance does not apply to:

a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

d. any claim made or suit brought against any **insured** by:

(1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**; or

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

(a) any **insured**;

(b) any employee of any **insured**; or

(c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown; wear and tear; gradual deterioration;

b. insects or vermin;

c. inherent vice; or

d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option RC - Replacement Cost - Contents.**

**SECTION I - CONDITIONS, 3. Loss Settlement** is replaced with the following:

a. We will pay actual cash value at the time of loss for:

(1) fences;

(2) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

22

FORM 3

(3) articles whose age or history contribute substantially to their value including, but not limited to memorabilia, souvenirs and collectors items; and

(4) property not useful for its intended purpose.

However, we will not pay an amount exceeding the applicable limit of liability or an amount exceeding that necessary to repair or replace the property.

b.   We will pay the cost to repair or replace:

(1) other personal property and other structures (except fences) under **Dwelling Extension**; and

(2) carpeting, domestic appliances, awnings and outdoor antennas, whether or not attached to buildings; subject to the following:

(a) loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis; and

(b) we will not pay an amount exceeding the smallest of the following:

i.   replacement cost at the time of loss;

ii.   the full cost of repair;

iii.   any special limit of liability described in the policy; or

iv.   any applicable Coverage A or Coverage B limit of liability.

c.   We will pay the cost to repair or replace buildings under Coverage A, subject to the following:

(1) until the actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings, up to the policy limit, not to exceed the replacement cost of the damaged part of the buildings for equivalent construction and use on the same premises;

(2) you must make claim within 180 days after the loss for any additional payment on a replacement cost basis.

Any additional payment is limited to the amount you actually and necessarily spend to repair or replace the damaged buildings with equivalent construction and for equivalent use on the same premises;

(3) we will not pay more than the $10,000 limit on land as provided in **SECTION I - ADDITIONAL COVERAGES**; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair or demolition of a building unless specifically provided under this policy or as may be provided by endorsement to this policy.

**Option SG - Silverware and Goldware Theft.** The theft limit on silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Kim M. Brunner*          Secretary          *Edward B Rust Jr*   President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FORM 3

# EXHIBIT D
## to Complaint for Declaratory Judgment

FP-7925
(12/90)

**GUARANTEED REPLACEMENT
COST - DWELLING**



# YOUR
# STATE FARM

# HOMEOWNERS EXTRA

# POLICY

FP-7925
(12/90)



This policy is one of the broadest forms available today, and provides you with outstanding value for your insurance dollars. However, we want to point out that every policy contains limitations and exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

|  | Begins on Page |
|---|---|
| **DECLARATIONS CONTINUED** | 1 |
| **DEFINITIONS** | 1 |
| **SECTION I - YOUR PROPERTY** | |
| COVERAGES | 3 |
|   Coverage A - Dwelling | 3 |
|   Coverage B - Personal Property | 3 |
|   Coverage C - Loss of Use | 4 |
|   Additional Coverages | 5 |
|   Inflation Coverage | 7 |
|   Guaranteed Extra Coverage | 7 |
| LOSSES INSURED | 8 |
| LOSSES NOT INSURED | 10 |
| CONDITIONS | 12 |
| **SECTION II - YOUR LIABILITY** | |
| COVERAGES | 14 |
|   Coverage L - Personal Liability | 14 |
|   Coverage M - Medical Payments to Others | 15 |
|   Additional Coverages | 15 |
| EXCLUSIONS | 16 |
| CONDITIONS | 18 |
| **SECTION I AND II - CONDITIONS** | 19 |
| **OPTIONAL PROVISIONS** | 20 |

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983.
And also,
Includes copyrighted material of Insurance Services Office with its permission.
Copyright, Insurance Services Office, 1975, 1977.

FP-7925
(12/90)

Printed in U.S.A.

## HOMEOWNERS POLICY - EXTRA FORM 5

### DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these **Declarations**.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these **Declarations** are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between yo and us and any of our agents.

Unless otherwise indicated in the application, you stat that during the three years preceding the time of your appl cation for this insurance your Loss History and Insuranc History are as follows:

1. Loss History: you and the members of your household have not had any insured losses, whether paid or no that would have been covered under the terms of thi or a similar policy; and

2. Insurance History: no insurance company has car celled or refused to renew your homeowners or fir insurance.

### DEFINITIONS

"You" and "your" mean the "named insured" shown in the **Declarations**. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the **Declarations**.

Certain words and phrases are defined as follows:

1. **"bodily injury"** means physical injury, sickness, or disease to a person. This includes required care, loss of services and death resulting therefrom.

   **Bodily injury** does not include:

   a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any **insured** to any other person;

   b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any **insured** to any other person; or

   c. emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury

unless it arises out of actual physical injury to som person.

2. **"business"** means a trade, profession or occupatio This includes farming.

3. **"Declarations"** means the policy **Declarations**, ar amended **Declarations**, the most recent renew notice or certificate, an Evidence of Insurance form any endorsement changing any of these.

4. **"insured"** means you and, if residents of your house hold:

   a. your relatives; and

   b. any other person under the age of 21 who is in th care of a person described above.

   Under Section II, **"insured"** also means:

   c. with respect to animals or watercraft to which th policy applies, the person or organization legal responsible for them. However, the animal watercraft must be owned by you or a perso included in 4.a. or 4.b. A person or organizatio

FP-7925
(12/90)

1

Printed in U.S.

using or having custody of these animals or water-craft in the course of a **business**, or without permission of the owner, is not an **insured**; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 4.a. or 4.b.

5. "**insured location**" means:

a. the **residence premises**;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 5.a. or 5.b.;

d. any part of a premises not owned by an **insured** but where an **insured** is temporarily residing;

e. vacant land owned by or rented to an **insured**. This does not include farm land;

f. land owned by or rented to an **insured** on which a one or two family dwelling is being constructed as a residence for an **insured**;

g. individual or family cemetery plots or burial vaults of an **insured**;

h. any part of a premises occasionally rented to an **insured** for other than **business** purposes; and

i. 500 acres or less of farm land (without buildings) rented to others.

6. "**motor vehicle**", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an **insured location** is not a **motor vehicle**;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed

by or carried on a vehicle included in 6.a. is not a **motor vehicle**;

c. a motorized golf cart, snowmobile, or other motorized land vehicle owned by an **insured** and designed for recreational use off public roads, while off an **insured location**. A motorized golf cart while used for golfing purposes is not a **motor vehicle**;

d. a motorized bicycle, tricycle or similar type of equipment owned by an **insured** while off an **insured location**; and

e. any vehicle while being towed by or carried on a vehicle included in 6.a., 6.b., 6.c. or 6.d.

7. "**occurrence**", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. **bodily injury**; or

b. **property damage**;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one **occurrence**.

8. "**property damage**" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by an **insured** is not **property damage**.

9. "**residence employee**" means an employee of an **insured** who performs duties, including household or domestic services, in connection with the maintenance or use of the **residence premises**. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the **business** of an **insured**.

10. "**residence premises**" means:

a. the one, two, three or four-family dwelling, other structures, and grounds; or

b. that part of any other building;

where you reside and which is shown in the **Declarations**.

## SECTION I - COVERAGES

**COVERAGE A - DWELLING**

1. We cover:

   a. the dwelling used principally as a private residence on the **residence premises** shown in the **Declarations**. This includes structures attached to the dwelling;

   b. materials and supplies located on or adjacent to the **residence premises** for use in the construction, alteration or repair of the dwelling or other structures on the **residence premises**;

   c. wall-to-wall carpeting attached to the dwelling on the **residence premises**; and

   d. outdoor antennas.

2. **Dwelling Extension.** We cover other structures on the **residence premises**, separated from the dwelling by clear space. Structures connected to the dwelling by only a fence, utility line, or similar connection are considered to be other structures.

   We do not cover other structures:

   a. not permanently attached to or otherwise forming a part of the realty;

   b. used in whole or in part for **business** purposes; or

   c. rented or held for rental to a person not a tenant of the dwelling, unless used solely as a private garage.

3. Except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Land**, we do not cover land, including the land necessary to support any Coverage A property. We do not cover any costs required to replace, rebuild, stabilize, or otherwise restore the land, nor do we cover the costs of repair techniques designed to compensate for or prevent land instability.

**COVERAGE B - PERSONAL PROPERTY**

1. We cover personal property owned or used by an **insured** while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the **residence premises** occupied exclusively by an **insured**. At your request, we will also cover personal property owned by a guest or a **residence employee**, while the property is in any other residence occupied by an **insured**.

We cover personal property usually situated at an **insured's** residence, other than the **residence premises**, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the **residence premises** is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, bank notes, coins and medals;

   b. $1,000 on property used or intended for use in **business**, including merchandise held as samples or for sale or for delivery after sale, while on the **residence premises**. This coverage is limited to $250 on such property away from the **residence premises**.

   Electronic data processing equipment or the recording or storage media used with that equipment is not included under this coverage;

   c. $1,000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps;

   d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

   e. $1,000 on trailers not used with watercraft;

   f. $2,500 for loss by theft of firearms;

FORM

g. $2,500 for loss by theft of silverware and goldware;

h. $5,000 on electronic data processing equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the **residence premises** except when said equipment or media are removed from the **residence premises** for the purpose of repair, servicing or temporary use. An **insured** student's equipment and media are covered while at a residence away from home; and

i. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

See **SECTION I - ADDITIONAL COVERAGES** for special limits on jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum.

2. **Property Not Covered.** We do not cover:

a. articles separately described and specifically insured in this or any other insurance;

b. animals, birds or fish;

c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

(1) used solely to service the **insured location**; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently installed in an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts;

f. property of roomers, boarders, tenants and other residents not related to an **insured**. We do cover property of roomers, boarders and other residents related to an **insured**;

g. property regularly rented or held for rental to others by an **insured**. This exclusion does not apply to property of an **insured** in a sleeping room rented to others by an **insured**;

h. property rented or held for rental to others away from the **residence premises**;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar detectors, antennas and other similar equipment. This exclusion applies only while the property is located in or upon an engine or motor propelled vehicle, whether attached or not;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

## COVERAGE C - LOSS OF USE

1. **Additional Living Expense.** If a Loss Insured causes the **residence premises** to become uninhabitable, we cover the necessary increase in cost to maintain your standard of living. Payment is for the shortest time required (a) to repair or replace the premises or (b) for your household to settle elsewhere, but not to exceed 12 months. This period of time is not limited by the expiration of this policy.

2. **Fair Rental Value.** If a Loss Insured causes that part of the **residence premises** rented to others or held for rental by you to become uninhabitable, we cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the **residence premises** rented or held for rental is uninhabitable.

FORM 5

3. **Prohibited Use**. If a civil authority prohibits your use of the **residence premises** because of direct damage to a neighboring premises by a Loss Insured, we cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I - ADDITIONAL COVERAGES

1. **Debris Removal**. We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

We will pay up to $500 in the aggregate for each loss to cover the reasonable expenses you incur in the removal of tree debris from the **residence premises** when the tree has damaged property covered under Coverage A.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense.

2. **Temporary Repairs**. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

3. **Trees, Shrubs and Other Plants**. We cover outdoor trees, shrubs, plants or lawns, on the **residence premises**, for loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the **residence premises**, Vandalism or Malicious Mischief or Theft. The limit for this coverage, including the removal of debris, shall not exceed 5% of the limit applying to the dwelling. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for **business** purposes.

4. **Fire Department Service Charge**. We will pay up to $500 for your liability assumed by contract or agree-ment for fire department charges. This means charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable.

5. **Property Removed**. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

6. **Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.**

a. We will pay up to $1,000 for:

(1) the legal obligation of an **insured** to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an **insured's** name. If an **insured** has not complied with all terms and conditions under which the cards are issued, we do not cover use by an **insured** or anyone else;

(2) loss to an **insured** caused by forgery or alter-ation of any check or negotiable instrument; and

(3) loss to an **insured** through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person. This limit applies when the forgery or alteration involves one or more instrument in the same loss.

b. We do not cover loss arising out of **business** pur-suits or dishonesty of an **insured**.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when

5

the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an **insured** for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an **insured** or an **insured's** bank against any suit for the enforcement of payment under the Forgery coverage.

7. **Power Interruption**. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the **residence premises**. The power interruption must be caused by a Loss Insured occurring on the **residence premises**. The power lines off the **residence premises** must remain energized. This coverage does not increase the limit applying to the damaged property.

8. **Refrigerated Products**. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the **residence premises** for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

9. **Arson Reward**. We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

10. **Jewelry and Furs**. Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware, and platinum are insured for accidental direct physical loss or damage.

We do not cover loss or damage caused by mechanical breakdown, wear and tear, gradual deterioration, insects, vermin, inherent vice, or seizure or destruction under quarantine or customs regulations.

In addition to limitations and exclusions otherwise applicable, the following also apply:

a. our limit for loss by any Coverage B peril except theft shall be the limit stated in the **Declarations** for Coverage B, plus $2,500; and

b. our limit for loss by theft and any covered peril, except those in item a., shall be $1,500 on any one article and $2,500 in the aggregate.

11. **Land**. If a single event results in both a Loss Insured to the insured dwelling, other than the breakage of glass or safety glazing material, and a loss of land stability, we will pay up to $10,000 as an additional amount of insurance for repair costs associated with the land. This includes the costs required to replace, rebuild, stabilize or otherwise restore the land. This Additional Coverage applies only to the land necessary to support that part of the insured dwelling sustaining the Loss Insured.

The **SECTION I - LOSSES NOT INSURED** reference to earth movement does not apply to the loss of land stability provided under this Additional Coverage.

12. **Volcanic Action**. We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

a. volcanic blast or airborne shock waves;

b. ash, dust or particulate matter; or

c. lava flow.

We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

6

FORM 5

This coverage does not increase the limit applying to the damaged property.

13. **Collapse.** We insure for direct physical loss to covered property involving collapse of a building or any part of a building caused only by one or more of the following:

   a. perils described in **SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROPERTY.** These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. hidden decay;

   c. hidden insect or vermin damage;

   d. weight of contents, equipment, animals or people;

   e. weight of ice, snow, sleet or rain which collects on a roof; or

   f. use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e., and f. unless the loss is a direct result of the collapse of a building.

   Collapse does not include settling, cracking, shrinking, bulging or expansion.

   This coverage does not increase the limit applying to the damaged property.

14. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the **residence premises,** when the keys to those locks are a part of a covered theft loss.

   No deductible applies to this coverage.

15. **Temporary Living Expense Allowance.** If the **residence premises** becomes uninhabitable because of a loss caused by earthquake, landslide or volcanic explosion, or if a civil authority prohibits your use of the **residence premises** because an earthquake, land-slide or volcanic explosion has occurred, we will pay up to $2,000 to cover the necessary increase in cost which you incur to maintain your standard of living.

   The **SECTION I - LOSSES NOT INSURED** references to earthquake, landslide and volcanic explosion do not apply to this Additional Coverage.

   This coverage is excess over any other valid and collectible insurance which is in force at the time of the loss.

   No deductible applies to this coverage.

## INFLATION COVERAGE

The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**.

To find the limits on a given date:

1. divide the Index on that date by the Index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limits of liability for Coverages A and B separately.

The limits of liability will not be reduced to less than the amounts shown in the **Declarations**.

If during the term of this policy the Coverage A limit of liability is changed at your request, the effective date of this Inflation Coverage provision is changed to coincide with the effective date of such change.

## GUARANTEED EXTRA COVERAGE

We will settle covered losses to the dwelling under Coverage A and other building structures under Dwelling Extension at replacement cost without regard to the limit of liability, subject to the **Loss Settlement** provisions in **SECTION I - CONDITIONS.**

Except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Land,** we will not pay for land, including the land necessary to support any Coverage A property, or any costs required to replace, rebuild, stabilize, or otherwise restore the land, nor will we pay the costs of repair techniques designed to compensate for or prevent land instability.

7

FORM 5

**Report Increased Values.**

You must notify us within 90 days of the start of any new building valued at $5,000 or more or any additions to or remodeling of buildings which increase their values by $5,000 or more and pay any additional premium due for the increase in value. If you fail to notify us within 90 days, our payment will not exceed the limit of liability applying to the building. See **SECTION I - CONDITIONS, Loss Settlement** for additional provisions.

# SECTION I - LOSSES INSURED

## COVERAGE A - DWELLING

We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

## COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in **SECTION I - LOSSES NOT INSURED:**

1. **Fire or lightning.**

2. **Windstorm or hail.** This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief,** meaning only willful and malicious damage to or destruction of property.

9. **Theft,** including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

   a. loss of a precious or semi-precious stone from its setting;

   b. loss caused by theft:

      (1) committed by an **insured** or by any other person regularly residing on the **insured location.** Property of a student who is an **insured** is covered while located at a residence away from home, if the theft is committed by a person who is not an **insured;**

      (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

      (3) from the part of a **residence premises** rented to others:

         (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

         (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

         (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

         (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

8

FORM 5

c. loss caused by theft that occurs away from the **residence premises** of:

(1) property while at any other residence owned, rented to, or occupied by an **insured**, except while an **insured** is temporarily residing there. Property of a student who is an **insured** is covered while at a residence away from home;

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the **residence premises** is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the **residence premises** for the first 30 days after the inception of this policy.

10. **Falling objects.** This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet** which causes damage to property contained in a building.

12. **Sudden and accidental discharge or overflow** of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or other type system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. **Sudden and accidental tearing asunder, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the **residence premises** while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage** to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. **Breakage of glass**, meaning damage to personal property caused by breakage of glass which is a part of a building on the **residence premises**. There is no coverage for loss or damage to the glass.

9

FORM 5

# SECTION I - LOSSES NOT INSURED

1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through m. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

   a. collapse, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Collapse;**

   b. freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance, or by discharge, leakage or overflow from within the system or appliance caused by freezing. This exclusion only applies while the dwelling is vacant, unoccupied or being constructed. This exclusion does not apply if you have used reasonable care to:

      (1) maintain heat in the building; or

      (2) shut off the water supply and drain the system and appliances of water;

   c. freezing, thawing, pressure or weight of water or ice, whether driven by wind or not, to a fence, pavement, patio, swimming pool, foundation, retaining wall, bulkhead, pier, wharf or dock;

   d. theft in or to a dwelling under construction, or of materials and supplies for use in the construction, until the dwelling is completed and occupied;

   e. vandalism or malicious mischief or breakage of glass and safety glazing materials if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant;

   f. continuous or repeated seepage or leakage of water or steam from a:

      (1) heating, air conditioning or automatic fire protective sprinkler system;

      (2) household appliance; or

   (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors;

   which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot. If loss to covered property is caused by water or steam not otherwise excluded, we will cover the cost of tearing out and replacing any part of the building necessary to repair the system or appliance. We do not cover loss to the system or appliance from which the water or steam escaped;

   g. wear, tear, marring, scratching, deterioration, inherent vice, latent defect or mechanical breakdown;

   h. corrosion, electrolysis, or rust;

   i. mold, or wet or dry rot;

   j. contamination;

   k. smog, smoke from agricultural smudging or industrial operations;

   l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, foundation, walls, floors, roofs or ceilings; or

   m. birds, vermin, rodents, insects, or domestic animals. We do cover the breakage of glass or safety glazing material which is a part of a building, when caused by birds, vermin, rodents, insects or domestic animals.

   However, we do insure for any resulting loss from items a. through m. unless the resulting loss is itself a Loss Not Insured by this Section.

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from

10

natural or external forces, or occurs as a result of any combination of these:

a. **Ordinance or Law**, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure, unless specifically provided under this policy.

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, sinkhole, subsidence and erosion. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in **SECTION I - ADDITIONAL COVERAGES, Volcanic Action.**

We do insure for any direct loss by fire, explosion other than explosion of a volcano, theft, or breakage of glass or safety glazing materials which are part of the dwelling resulting from earth movement, provided the resulting loss is itself a Loss Insured.

c. **Water Damage**, meaning:

(1) flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

(2) water from outside the plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

(3) natural water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

d. **Neglect**, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

e. **War**, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

f. **Nuclear Hazard**, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion, or smoke. However, we do insure for direct loss by fire resulting from the nuclear hazard.

3. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraphs 1. and 2. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault; or

b. defect, weakness, inadequacy, fault or unsoundness in:

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the **residence premises.**

However, we do insure for any resulting loss from items a. and b. unless the resulting loss is itself a Loss Not Insured by this Section.

FORM 5

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the **insured** for an amount greater than the **insured's** interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, actual cash value and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other **insured**:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the **insured's** household or others for examination under oath to the extent it is within the **insured's** power to do so; and

   e. submit to us, within 60 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the **insured** and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss;

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled as follows:

   a. We will pay actual cash value at the time of loss for:

      (1) antiques, fine arts, painting, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items;

      (3) property not useful for its intended purpose.

      However, we will not pay an amount exceeding the applicable limit of liability or an amount exceeding that necessary to repair or replace the property.

FORM 5

b. We will pay the cost to repair or replace other personal property, carpeting, domestic appliances, awnings and outdoor antennas whether or not attached to buildings, subject to the following:

(1) loss to property not repaired or replaced within one year after the loss will be settled on an actual cash value basis;

(2) we will not pay an amount exceeding the smallest of the following:

(a) replacement cost at the time of loss;

(b) the full cost of repair;

(c) any special limit of liability described in the policy; or

(d) any applicable Coverage A or Coverage B limit of liability.

c. We will pay the cost to repair or replace buildings under Coverage A and other structures under Dwelling Extension, subject to the following:

(1) until actual repair or replacement is completed, we will pay the actual cash value of the damage to the buildings or other structures, up to the policy limits, not to exceed the replacement cost of the damaged part of the building or other structures, for equivalent construction and use on the same premises;

(2) you must make claim within 180 days after the loss for any additional payment on a replacement cost basis.

Any additional payment is limited to that amount you actually and necessarily spend to repair or replace the damaged buildings or other structures with equivalent construction and for equivalent use on the same premises;

(3) we will not pay more than the $10,000 limit on land as provided in **SECTION I - ADDITIONAL COVERAGES**; and

(4) we will not pay for increased costs resulting from enforcement of any ordinance or law regulating the construction, repair, or demolition of a building or other structure, unless specifically provided under this policy.

4. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

a. repair or replace any part to restore the pair or set to its value before the loss; or

b. pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

8. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

13

FORM 5

9. **Our Option.** We may repair or replace any part of the property damaged or stolen with equivalent property. Any property we pay for or replace becomes our property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

   a. reach agreement with you;

   b. there is an entry of a final judgment; or

   c. there is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an **insured**.

12. **Mortgage Clause.** The word "mortgagee" includes trustee:

   a. If a mortgagee is named in this policy, any loss payable under Coverage A shall be paid to the mortgagee and you, as interests appear. If more than one mortgagee is named, the order of payment shall be the same as the order of precedence of the mortgages.

   b. If we deny your claim, that denial shall not apply to a valid claim of the mortgagee, if the mortgagee:

      (1) notifies us of any change in ownership, occupancy or substantial change in risk of which the mortgagee is aware;

      (2) pays any premium due under this policy on demand if you have neglected to pay the premium; or

      (3) submits a signed, sworn statement of loss within 60 days after receiving notice from us of your failure to do so. Policy conditions relating to Appraisal, Suit Against Us and Loss Payment apply to the mortgagee.

   c. If this policy is cancelled by us, the mortgagee shall be notified at least 10 days before the date cancellation takes effect.

   d. If we pay the mortgagee for any loss and deny payment to you:

      (1) we are subrogated to all the rights of the mortgagee granted under the mortgage on the property; or

      (2) at our option, we may pay to the mortgagee the whole principal on the mortgage plus any accrued interest. In this event, we shall receive a full assignment and transfer of the mortgage and all securities held as collateral to the mortgage debt.

   e. Subrogation shall not impair the right of the mortgagee to recover the full amount of the mortgagee's claim.

13. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

14. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void and we will not pay you or any other **insured** for this loss.

# SECTION II - LIABILITY COVERAGES

## COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:

1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the **occurrence**, equals our limit of liability.

FORM 5

## COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing **bodily injury**. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the **insured location** with the permission of an **insured**;

2. to a person off the **insured location**, if the **bodily injury**:

   a. arises out of a condition on the **insured location** or the ways immediately adjoining;

   b. is caused by the activities of an **insured**;

   c. is caused by a **residence employee** in the course of the **residence employee's** employment by an **insured**; or

   d. is caused by an animal owned by or in the care of an **insured**; or

3. to a **residence employee** if the **occurrence** causing **bodily injury** occurs off the **insured location** and arises out of or in the course of the **residence employee's** employment by an **insured**.

## SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses**. We pay:

   a. expenses we incur and costs taxed against an **insured** in suits we defend;

   b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

   c. reasonable expenses an **insured** incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

   d. prejudgment interest awarded against the **insured** on that part of the judgment we pay; and

   e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

2. **First Aid Expenses**. We will pay expenses for first aid to others incurred by an **insured** for **bodily injury** covered under this policy. We will not pay for first aid to you or any other **insured**.

3. **Damage to Property of Others**:

   a. We will pay for **property damage** to property of others caused by an **insured**.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one **occurrence**.

   c. We will not pay for **property damage**:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an **insured** who is 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by or rented to an **insured**, a tenant of an **insured**, or a resident in your household; or

      (4) arising out of:

         (a) **business** pursuits;

         (b) any act or omission in connection with a premises an **insured** owns, rents or controls, other than the **insured location**; or

         (c) the ownership, maintenance, or use of a **motor vehicle**, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

Coverage L and Coverage M do not apply to:

a. **bodily injury** or **property damage**:

   (1) which is either expected or intended by an **insured**; or

   (2) to any person or property which is the result of willful and malicious acts of an **insured**;

b. **bodily injury** or **property damage** arising out of **business** pursuits of any **insured** or the rental or holding for rental of any part of any premises by any **insured**. This exclusion does not apply:

   (1) to activities which are ordinarily incident to non-**business** pursuits;

   (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

   (3) to the rental or holding for rental of a residence of yours:

      (a) on an occasional basis for the exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

      (c) in part, as an office, school, studio or private garage;

   (4) when the dwelling on the **residence premises** is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

   (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others;

c. **bodily injury** or **property damage** arising out of the rendering or failing to render professional services;

d. **bodily injury** or **property damage** arising out of any premises owned or rented to any **insured** which is not an **insured location**. This exclusion does not apply to **bodily injury** to a **residence**

**employee** arising out of and in the course of the **residence employee's** employment by an **insured**;

e. **bodily injury** or **property damage** arising out of the ownership, maintenance, use, loading or unloading of:

   (1) an aircraft;

   (2) a **motor vehicle** owned or operated by or rented or loaned to any **insured**; or

   (3) a watercraft:

      (a) owned by or rented to any **insured** if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

      (b) owned by or rented to any **insured** if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

      (c) powered by one or more outboard motors with more than 25 total horsepower owned by any **insured**;

      (d) designated as an airboat, air cushion, or similar type of craft; or

      (e) owned by any **insured** which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

   This exclusion does not apply to **bodily injury** to a **residence employee** arising out of and in the course of the **residence employee's** employment by an **insured**. Exclusion e.(3) does not apply while the watercraft is on the **residence premises**;

f. **bodily injury** or **property damage** arising out of:

   (1) the entrustment by any **insured** to any person;

   (2) the supervision by any **insured** of any person;

   (3) any liability statutorily imposed on any **insured**; or

   (4) any liability assumed through an unwritten or written agreement by any **insured**;

FORM 5

No one shall have the right to join us as a party to an action against an **insured**. Further, no action with respect to Coverage L shall be brought against us until the obligation of the **insured** has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured**. Bankruptcy or insolvency of an **insured** shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L**. This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

# SECTION I AND SECTION II - CONDITIONS

1. **Policy Period**. This policy applies only to loss under Section I or **bodily injury** or **property damage** under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud**. This policy is void as to you and any other **insured**, if you or any other **insured** under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause**. If we adopt any revision which would broaden coverage under this policy without additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions**. A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation**.

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. Proof of mailing shall be sufficient proof of notice.

   (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 10 days before the date cancellation takes effect.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

      (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

      (b) if the risk has changed substantially since the policy was issued.

      We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our

FORM 5

rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

6. **Nonrenewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the **Declarations**. The notice will be mailed or delivered at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

7. **Assignment.** Assignment of this policy shall not be valid unless we give our written consent.

8. **Subrogation.** An **insured** may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an **insured** shall:

a. sign and deliver all related papers;

b. cooperate with us in a reasonable manner; and

c. do nothing after a loss to prejudice such rights.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the **Declarations** or the spouse, if a resident of the same household, dies:

a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

b. **insured** includes:

(1) any member of your household who is an **insured** at the time of your death, but only while a resident of the **residence premises**; and

(2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

## OPTIONAL POLICY PROVISIONS

The following Optional Policy Provisions are subject to all the terms and provisions of this policy, unless otherwise indicated in the terms of the option.

Each Optional Policy Provision applies only as indicated in the **Declarations**.

**Option AI - Additional Insured.** The definition of **insured** is extended to include the person or organization named in the **Declarations** as an Additional Insured or whose name is on file with us. Coverage is with respect to:

1. Section I - Coverage A; or

2. Section II - Coverages L and M but only with respect to the **residence premises**. This coverage does not apply to **bodily injury** to an employee arising out of or in the course of the employee's employment by the person or organization.

This option applies only with respect to the location shown in the **Declarations**.

**Option BP - Business Property.**

**COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability,** item b. is changed as follows:

The $1,000 limit is replaced with the amount shown in the **Declarations** for this option.

**Option BU - Business Pursuits.**

Section II - Exclusion 1.b. is modified as follows:

1. Section II coverage applies to the **business** pursuits of an **insured** who is a:

a. clerical office employee, salesperson, collector, messenger; or

20

FORM 5

(1/90)

exclusions. Please read your policy carefully, especially "Losses not insured" and all exclusions.

b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

a. for **bodily injury** or **property damage** arising out of a **business** owned or financially controlled by the **insured** or by a partnership of which the **insured** is a partner or member;

b. for **bodily injury** or **property damage** arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

(1) architectural, engineering or industrial design services;

(2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

(3) beauty or barber services or treatment;

c. for **bodily injury** to a fellow employee of the **insured** injured in the course of employment; or

d. when the **insured** is a member of the faculty or teaching staff of a school or college:

(1) for **bodily injury** or **property damage** arising out of the maintenance, use, loading or unloading of:

(a) draft or saddle animals, including vehicles for use with them; or

(b) aircraft, **motor vehicles**, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

owned or operated, or hired by or for the **insured** or employer of the **insured** or used by the **insured** for the purpose of instruction in the use thereof; or

(2) under Coverage M for **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**.

**Option FA - Firearms**. Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the **Declarations**. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an **insured's** employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the **Declarations** for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the **Declarations** for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the **Declarations**.

**Option HC - Home Computer**. The Section I - Special Limits of Liability for electronic data processing equipment and the recording or storage media used with that equip-

ment is increased to be the amount shown on the **Declarations** for this option.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental **business** occupancy on file with us.

1. Section I: COVERAGE B - PERSONAL PROPERTY is extended to include equipment, supplies and furnishings usual and incidental to this **business** occupancy. This Optional Policy Provision does not include electronic data processing equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale. or for delivery after sale.

   The Option IO limits are shown in the **Declarations**. The first limit applies to property on the **residence premises**. The second limit applies to property while off the **residence premises**. These limits are in addition to the Section I, COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability on property used or intended for use in a **business**.

2. Section II: The **residence premises** is not considered **business** property because an **insured** occupies a part of it as an incidental **business**.

3. Section II: Exclusion 1.b. of Coverage L and Coverage M is replaced with the following:

   b. **bodily injury** or **property damage** arising out of **business** pursuits of an **insured** or the rental or holding for rental of any part of any premises by an **insured**. This exclusion does not apply:

      (1) to activities which are ordinarily incidental to non-**business** pursuits or to **business** pursuits of an **insured** which are necessary or incidental to the use of the **residence premises** as an incidental **business**;

      (2) with respect to Coverage L to the occasional or part-time **business** pursuits of an **insured** who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for exclusive use as a residence;

      (b) in part, unless intended for use as a residence by more than two roomers or boarders; or.

      (c) in part, as an incidental **business** or private garage;

      (4) when the dwelling on the **residence premises** is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings) not in excess of 500 acres, rented or held for rental to others.

4. This insurance does not apply to:

   a. **bodily injury** to an employee of an **insured** arising out of the **residence premises** as an incidental **business** other than to a **residence employee** while engaged in the employee's employment by an **insured**;

   b. **bodily injury** to a pupil arising out of corporal punishment administered by or at the direction of the **insured**;

   c. liability arising out of any acts, errors or omissions of an **insured**, or any other person for whose acts an **insured** is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an **insured's** incidental **business** involving data processing, computer consulting or computer programming; or

   d. any claim made or suit brought against any **insured** by:

      (1) any person who is in the care of any **insured** because of child care services provided by or at the direction of:

         (a) any **insured**;

         (b) any employee of any **insured**; or

         (c) any other person actually or apparently acting on behalf of any **insured**; or

FORM 5

exclusions. Please read your policy carefully, especially "Losses Not Insured" and all exclusions.

(12-91)

(2) any person who makes a claim because of **bodily injury** to any person who is in the care of any **insured** because of child care services provided by or at the direction of:

    (a) any **insured**;

    (b) any employee of any **insured**; or

    (c) any other person actually or apparently acting on behalf of any **insured**.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any **insured**, or to the part-time child care services provided by any **insured** who is under 19 years of age.

**Option JF - Jewelry and Furs.** Under **SECTION I - ADDITIONAL COVERAGES**, item 10. is changed as follows:

    1. the "$1,500" limit is replaced with the first amount shown in the **Declarations** for this option; and

    2. the "$2,500" limit is replaced with the second amount shown in the **Declarations** for this option.

**Option SG - Silverware and Goldware Theft.** The theft limit on silverware and goldware is increased to be the amount shown in the **Declarations** for this option.

 

IN WITNESS WHEREOF, this Company has executed and attested these presents; but this policy shall not be valid unless countersigned by the duly authorized Agent of this Company at the agency hereinbefore mentioned.

*Kim M. Brunner*    Secretary        *Edward B Rust, Jr*    President

The Board of Directors, in accordance with Article VI(c) of this Company's Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by said Company such sums out of its earnings as in its judgment are proper.

FORM 5